## Richmond

COLWAY REALTY CORPORATION, ET AL. v. COMMONWEALTH OF VIRGINIA.

April 23, 1956.

Record No. 4519.

Present, All the Justices.

The opinion states the case.

*Edward S. Ferebee*, for the plaintiffs in error.

*R. D. McIlwaine, III, Assistant Attorney General (J. Lindsay Almond, Jr., Attorney General* on brief), for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

On August 13, 1954, the Department of Taxation assessed a capital tax for the years 1951, 1952 and 1953 upon certain intangible personal property owned by three corporations, the Colway Realty Corporation, Camelot Court, Inc., and Tazman Realty Corporation. Each of the corporations claimed the assessment was illegal and filed a petition under Code Sec. 58-1130 for correction of the alleged erroneous assessment. The facts and issues involved were the same except for the difference in the amount of the as-- sessments, and by agreement of the parties the three petitions were heard together. From an order dismissing the petitions the corporations obtained this appeal.

The decisive question raised is whether the corporations were engaged in business within the purview of the Virginia capital tax statutes.

The principal office of each corporation is in Norfolk, Virginia. The purposes for which each corporation was formed are the same, and expressed in the charter of Colway Realty Corporation as follows:

"To purchase, lease, hire or otherwise acquire real and personal property, improved and unimproved, of every kind and description, and to sell, dispose of, lease, convey, encumber and mortgage said property, or any part thereof. To acquire, hold, lease, manage, operate, develop, control, build, erect, maintain for the purposes of said Company, construct, reconstruct or purchase, either directly or through ownership of stock in any corporation, any lands, buildings, office, stores, warehouses, mills, shops, factories, plants, gas houses, machinery rights, easements, privileges, franchise and licenses, and to sell, lease, hire or otherwise dispose of the lands, buildings or other property of the company, or any part thereof."

The corporations engage in no business other than owning and operating apartment houses. The Colway Realty Corporation owns

and operates three apartment buildings, and during the three year period for which the assessments were made the earned surplus and undivided profits therefrom were $65,475.30; Tazman Realty Corporation owns and operates two apartment buildings, and during the same period its earned surplus and undivided profits were $76,026.15, and Camelot Court, Inc., owns and operates one apartment building, and during the same period its earned surplus and undivided profits therefrom were $11,434.26.

Each corporation employed W. N. Bott, a licensed real estate broker, doing business in the City of Norfolk, as its rental agent to manage, control and operate the apartment buildings. Under the agent's supervision the corporations furnish to the tenants all modern conveniences, including lights, heat, water and janitor service. The agent collected the rents, out of which he paid all operating expenses. No part of the net profits or earnings was paid as dividends to the stockholders, but was used for the retirement of mortgage indebtedness, and was held for future maintenance and depreciation.

Appellants contend that the decision in *Bott* v. *Commonwealth*, 187 Va. 745, 48 S. E. 2d 235, is controlling. In that case we held that the operation of an apartment house or office building, where all the modern conveniences were furnished as a part of the consideration paid for rooms, was a business, but that the proof did not bring such operation within the purview of the statute. That case was decided on the specific facts proven. So must this case be decided.

The facts in the two cases are distinguishable. In the *Bott* case the uncontradicted facts were that three individuals, W. M. Bott, Edward S. Ferebee and his wife purchased as an investment three apartment buildings, titles to which were taken in their names. Their relationship was not that of partners, as claimed by the Commonwealth, but was that of tenants in common. Bott's chief occupation was a real estate broker, Ferebee's chief occupation was the practice of law, his wife was engaged in no business. While Ferebee was in the military service W. M. Bott managed the buildings, collected the rents, paid the taxes and operating expenses, and when necessary for any unusual expenditure on the buildings he consulted Ferebee either by letter or in person. The net profits from the rents received were paid each year to the different individuals in proportion to their interest in the

property, and the income tax thereon, both Federal and State, was paid by the respective parties. There remained no excess of bills and accounts receivable over bills and accounts payable. In addition, the administrative officials charged with the duty of making the assessment testified that it had been their uniform policy to exclude the operation of an apartment building from the definition of "business" as used in the statutes. Confronted with this testimony we said that in view of the somewhat doubtful meaning of the word "business", as used in the Tax Code, and the long continued policy of the administrative officials, the three individual owners of the apartments were not liable for the capital tax sought to be imposed upon them. On the point we said:

"The statute imposing a tax on capital used in business in one form or another has been in force in this State for more than forty years during which time the legislature has apparently acquiesced in the construction placed thereon by the administrative officers. This being true, the tax authorities are not justified in making such a radical change in policy without an appropriate act of the General Assembly. It would be unjust to sustain the assessment of this tax when the same class of property owned by others similarly situated is not taxed."

According to the testimony of the Tax Commissioner in this case, the uniform policy of administrative officers charged with the duty of levying the tax is exactly opposite to that which other officers declared it to be in the *Bott* case. In the trial of the case now under consideration, C. H. Morrissette, the Tax Commissioner, said: ". . . I can say that every corporation, Your Honor, in Virginia is assessable and is assessed with the capital tax, whether it operates an apartment house or is engaged in any other phase of real estate business."

The undenied testimony in this case is that the corporations were organized for the express purpose of engaging in business. It is so stated in their charters, and the only business activity which the corporations have undertaken is that of owning and operating apartment houses, from which they derive large incomes. After deducting all operating expenses each has accumulated substantial amounts as earned surplus and undivided profits. Indeed, the activities in which they are engaged are referred to in their brief as a business. Their exact language is "no other business of any kind has ever been engaged in or by any of the corporations". Whether such

operations are conducted by the officers of the corporation or by an agent selected by them is immaterial.

A license tax for the privilege of conducting the business of operating an apartment house or office building has been held valid in other jurisdictions. *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187, 31 S. Ct. 361, 55 L. ed. 428; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 31 S. Ct. 342, 55 L. ed. 389, Ann. Cas. 1912B, 1312; *Littlehales* v. *District of Columbia*, 130 F. 2d 402; *District of Columbia* v. *Wardell*, 122 F. 2d 202; *State* v. *Heymann*, 178 La. 479, 151 So. 901. Virginia has imposed no license tax upon such business activity as it has done upon merchants, real estate brokers, trades etc. But Virginia has, by Code Sec. 58-410, imposed a capital tax upon all persons engaged in any trade or business in the following language:

"All capital of any trade or business of any person, firm or corporation, except the capital of any trade or business which is otherwise specifically taxed or specifically exempt from taxation, shall be deemed to be intangible personal property."

The real estate owned by the corporation is otherwise specifically taxed, hence it is not taxed as capital. Code Sec. 58-412.

Code Sec. 58-411 clearly states what property the legislature intended to include in its use of the word "capital". It provides:

"(1) The inventory of stock on hand, which shall include all materials for use in the business, whether at the place of business, in storage or elsewhere in the State.

"(2) The excess of all bills and accounts receivable over bills and accounts payable.

"(3) All money on hand and on deposit.

"(4) All other taxable personal property of any kind whatever, including all choses in action, equities, demands and claims, but excluding the property hereinafter specifically mentioned in § 58-412."

The definition of "capital" thus prescribed is not the orthodox definition, but is a definition designed for tax purposes only. For a comprehensive discussion of the statutory definition of capital see *City of Roanoke* v. *James W. Michael's Bakery Corp. etc.*, 180 Va. 132, 21 S. E. 2d 788.

Appellants' next contention is that the trial court erred in refusing to include in bills payable the debts owed by them secured by deeds of trust and representing the balance of the unpaid purchase price for the buildings.

The only capital of the corporations upon which the tax was imposed in this case was the "excess of all bills and accounts receivable over bills and accounts payable". The State Department of Taxation, from the books of the corporation, determined these excesses and the tax thereon for the three year period to be as follows:

For Colway Realty Corporation:

| Tax Year | Page and Line | Subject of Taxation | Values | Taxes Assessed |
|---|---|---|---|---|
| 1951 | 5-5 | Additional | 30,257.82 | |
| 1952 | | Capital | 36,855.90 | |
| 1953 | | | 43,467.25 | 829.35 |
| | | Total amount due | | 829.35 |

For Camelot Court, Incorporated:

| Tax Year | Page and Line | Subject of Taxation | Values | Taxes Assessed |
|---|---|---|---|---|
| 1951 | 5-3 | Additional | 6,304.52 | |
| 1952 | | Capital | 5,780.27 | |
| 1953 | | | 4,097.00 | 121.36 |
| | | Total amount due | | 121.36 |

For Tazman Realty Corporation:

| Tax Year | Page and Line | Subject of Taxation | Values | Taxes Assessed |
|---|---|---|---|---|
| 1951 | 6-4 | Additional | 13,420.87 | |
| 1952 | | Capital | 24,242.46 | |
| 1953 | | | 34,056.38 | 537.90 |
| | | Total amount due | | 537.90 |

The trial court declined to permit appellants to deduct from bills and accounts receivable the sum of $96,411.66 claimed by the Colway Realty Corporation, the sum of $46,875.00 claimed by Tazman Realty Corporation, and the sum of $78,000.00 claimed by Camelot Court, Inc., on the ground that these were debts incurred for capital expenditures and not for operating expenses.

The refusal of the court to allow these sums to be included in bills payable and deducted from bills receivable is in accord with

the provisions of Code Sec. 58-422, the pertinent part of which is as follows:

"No credit shall be allowed for such deductions \* \* \* unless the taxpayer certify that such indebtedness was contracted in the usual course of business and not for the purposes of *capital outlay*." (Italics Added)

The court permitted appellants to include in bills payable any and all necessary business expenses of the corporations, but correctly held that the balance due on the mortgage indebtedness incurred as a part of the purchase price of the apartment buildings was not a debt "contracted in the usual course of business", but was a debt incurred for the purpose of capital outlay. The refusal of the trial court to include in bills payable any part of the mortgage indebtedness is also in accord with the previous holding of this court construing the old statute, Schedule C of the Tax Bill, Pollard's Code, 1904, vol. 2, p. 2193, defining capital.

In *Bridgewater Man. Co.* v. *Funkhouser*, 115 Va. 476, 79 S. E. 1074, it is said:

"The statute . . . . defines what shall constitute *capital* in any trade or business, and provides that the specifications made shall not be taxed otherwise than as capital. We would be no more justified in reading into the statute a deduction of indebtedness against these specifications constituting capital than we would be in making a like allowance against the value of land or chattel property."

In *Bott* v. *Commonwealth, supra,* (187 Va. 745, at 748) we said:

"The Department of Taxation in checking over these returns ascertained that the larger sums for each of the three years listed above as 'bills payable' were debts of the individuals secured by a mortgage on the three apartment houses and made for capital outlay. The provisions of section 75 of the Tax Code (Code Sec. 58-422) do not permit such expenditure for capital outlay to be deducted from accounts receivable."

We find no error in this ruling of the court.

■ Appellants' final contention is that the manner in which the Department of Taxation construes and applies Secs. 58-410 and 58-411 violates Sec. 168 of the Constitution of Virginia and the Fourteenth Amendment to the Constitution of the United States.

This contention is based upon the assumption that the administrative policy of the Department of Taxation is to impose a capital tax on corporations and partnerships engaged in the business of

operating apartment houses, but not upon individuals engaged in the same business.

The evidence in this case is that the policy of this Department is to impose a capital tax upon every corporation, individual or partnership engaged in operating an apartment house to the extent sufficient to constitute an established business. Taking this evidence to be true, and there is no contradiction of the same in this record, the contention is unsound as it is based upon a false premise. We find nothing discriminatory in the statutes or the method of their enforcement.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*