487 P.2d 1099

**WESTLAND CORPORATION, Appellant,**

v.

**COMMISSIONER OF REVENUE,**
**Appellee.**

**No. 523.**

Court of Appeals of New Mexico.

May 21, 1971.

Rehearing Denied June 16, 1971.

Certiorari Denied July 21, 1971.

Vance Mauney, Botts, Botts & Mauney, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., Santa Fe, Richard J. Smith, Asst. Atty. Gen., for appellee.

OPINION

SUTIN, Judge.

This is a gross receipts tax case directly appealed by Westland Corporation from the decision and order of the Commissioner of Revenue under Administrative Procedures Act, §§ 4–32–1 to 4–32–25, N.M. S.A.1953 (Repl.Vol. 2, Supp.1969), adopted by the legislature in 1969. This was pursuant to Westland's "Notice of Appeal" in the transcript on appeal. In its brief, Westland states that this is an appeal pursuant to § 72–13–39, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1969) of the Tax Administration Act. The brief, however, cannot give the Court of Appeals jurisdiction.

*Does the Court of Appeals have Jurisdiction under the Administrative Procedures Act?*

■ The Administrative Procedures Act is not applicable here because the Commissioner of Revenue has not been specifically placed under the Act, nor subject to its provisions as provided by § 4–32–23 and § 4–32–2A, N.M.S.A.1953 (Repl.Vol. 2, Supp.1969). Mayer v. Public Employees Retirement Board, 81 N.M. 64, 463 P.2d 40 (Ct.App.1970). Therefore, this court lacks jurisdiction to review decisions of the Commissioner of Revenue under the Administrative Procedures Act.

*Can Westland Appeal under the Tax Administration Act?*

■ The Tax Administration Act [§§ 72–13–13 to 72–13–92, N.M.S.A., 1953 (Repl.Vol. 10, pt. 2, Supp.1969)] applies to and governs the Gross Receipts and Compensating Tax Act [§§ 72–16A–1 to 72–16A–19, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1969)], and the Emergency School Tax Act [§§ 72–16–1 through 72–16–19, N.M.S.A.1953 (Supp.1965) (Repealed 1967)], which are the subjects of this appeal. Section 72–13–39, N.M.S.A. 1953 (Repl.Vol. 10, pt. 2) provides for appeals from the commissioner's decision and order. The Court of Appeals has jurisdiction under this Act. Transamerica Leasing Corp. v. Bureau of Revenue, 80 N.M.

48, 450 P.2d 934 (Ct.App.1969); Union County Feedlot, Inc. v. Vigil, 79 N.M. 684, 448 P.2d 485 (Ct.App.1968).

Section 72–13–39, N.M.S.A.1953 (Repl. Vol. 10, pt. 2) reads as follows:

"Appeals from commissioner's decision and order.—A. If the protestant or claimant is dissatisfied with the action and order of the commissioner after a hearing, he may appeal to the court of appeals for further relief, but only to the same extent and upon the same theory as was asserted in the hearing before the commissioner or his delegate. All such appeals shall be upon the record made at the hearing and shall not be de novo. All such appeals to the court of appeals shall be taken within thirty [30] days of the date of mailing or delivery of the written decision and order. of the commissioner to the protestant or .claimant and if not so taken, the decision and order are conclusive.

"B. The procedure for perfecting an appeal hereunder to the court of appeals consists of the timely filing of a complaint on appeal with a copy attached of the decision and order from which appeal is taken. The appellant shall certify in his complaint on appeal that arrangements have been made with the commissioner or his delegate for preparation of a sufficient number of transcripts of the record of the hearing on which the appeal depends to support his appeal to the courts, at the expense of appellant, including three [3] copies which he shall furnish to the commissioner or his delegate.

"C. Upon appeal, the court shall set aside a decision and order of the commissioner only if found to be (1) arbitrary, capricious or an abuse of discretion, (2) not supported by substantial evidence in the record, or (3) otherwise not in accordance with law."

■ Pursuant to the above statute, all appeals shall be taken by timely filing of a "complaint" in the Court of Appeals within 30 days of the date of mailing or delivery

of the written decision and order of the commissioner. This is an administrative procedure in which the word "complaint" means an "expression of dissatisfaction." A "complaint" on appeal under this tax statute should be a short and plain statement showing that the taxpayer is dissatisfied and entitled to be heard.

Westland filed a "Notice of Appeal" which sets forth the facts upon which the "petitioner" relies, and it satisfied the requirement.

We, therefore, hold that this court has jurisdiction of this appeal.

Section 72-13-39(C), supra, provides the three grounds upon which the decision and order shall be set aside. No contention is made that the decision and order was arbitrary, capricious, or an abuse of discretion. The two remaining questions are: (1) Is the decision and order supported by substantial evidence? (2) Is it in accordance with law? We shall discuss them together.

*Is the Decision and Order Supported by Substantial Evidence in the Record and in Accordance with Law?*

The commissioner ruled that Westland was engaged in business; that monies received by it were gross receipts, and Westland was performing services for consideration for the three corporations so that all of its receipts were subject to tax.

We must, therefore, decide whether Westland was engaged in business within the meaning of the pertinent statutes, and whether all of the monies received by Westland were "gross receipts."

(1) *Was Westland Engaged in Business?*

The parties stipulated the following facts:

Westland is engaged in "activities" in connection with P.D.Q., Inc., Quick N' Handy, Inc., and Blue Ribbon Foods, Inc., all four are separate New Mexico corporations. Each is under common owner-ship with capital stock in each corporation owned by two McDonalds.

Westland has a banking account in which it placed funds received from each of the other corporations. These funds were estimated to be the amount required to pay advertising, legal fees, accounting fees, accounting expense, office supplies, bookkeeping costs (including salaries of administrative personnel and bookkeepers who are on the payroll of Westland), and overhead expenses, including rent on space to house the administrative function, book-keeping and other office machines, repairs, utilities, insurance on vehicles, vehicle expense (including gas and oil), licenses, contributions to business and charitable organizations, bank charges, bank interest, and other banking expenses, and depreciation on all personal property of Westland, materials and supplies, used in this function are then paid out of these monies paid by the corporations and deposited in the banking account of Westland.

The purpose of the plan is to centralize the bookkeeping and management functions for the three other corporations, reduce the cost thereof, and make performance more efficient. The taxable period involved was January 1, 1966 through November 30, 1968.

Attached to the stipulation is the Notice of Assessment of Taxes with the commissioner's audits. The audits show the amount of revenue received by Westland from the three corporations, and the itemized disbursement of funds by Westland.

We are unable to determine from the stipulation, (1) whether the total amount of the disbursements are used for the operation of Westland, or (2) whether Westland, as agent or trustee for the three corporations, used a portion of the disbursements for the expense and operation of each of the three corporations. If Westland is subject to taxation, we are unable to determine whether all of the monies

received by Westland were "gross receipts."

Westland contends it was not engaged in business within the meaning of the applicable statutes.

Prior to July 1, 1967, the terms "business" and "engaging" were defined in § 72–16–2(F) and (G), N.M.S.A.1953 (Repl. Vol. 10, pt. 2) as follows:

"F. 'Business' includes *all activities or acts engaged in,* personal, professional, and corporate, or caused to be engaged in with the object of *gain, benefit or advantage* either *direct or indirect.*

"G. 'Engaging,' when used with reference to engaging or continuing in a business or profession, *includes the exercise of corporate* or franchise *power,* but it does not include occasional and isolated sales, or transactions by a person who does not hold himself out as engaged in business." [Emphasis added].

After July 1, 1967, § 72–16A–3(E), N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1969), the definition was reduced in wordage:

"E. 'engaging in business' means carrying on or causing to be carried on any activity with the purpose of direct or indirect benefit;"

Westland contends that these statutes should be strictly construed against the state; that Westland does not hold itself out as engaging in business generally, but performs administrative functions only.

■ The issue under this point is whether the tax statutes apply to Westland. Strict construction does arise against the state where the applicability of the tax statute is ambiguous or doubtful in meaning or intent. Field Enterprises Educational Corp. v. Commissioner of Revenue, 82 N.M. 24, 474 P.2d 510 (Ct.App.1970); New Mexico Electric Service Co. v. Jones, 80 N.M. 791, 461 P.2d 924 (Ct.App.1969).

The above statutes are not ambiguous or doubtful in meaning or intent on the issue of whether Westland is "engaged in business". See, Bell Telephone Laboratories, Inc. v. Bureau of Revenue, 78 N.M. 78, 428 P.2d 617 (1966); Besser Co. v. Bureau of Revenue, 74 N.M. 377, 394 P.2d 141 (1964).

Westland admits it is engaged in "activities." Its object is "gain, benefit or advantage either direct or indirect." Its "activity" is "with the purpose of direct or indirect benefit."

For all monies received by Westland from the three corporations *in excess* of their necessary expenses, Westland received a direct benefit. This excess money was used for its own purposes. In its operations on behalf of itself and the three corporations, it held itself out as engaged in business. It was doing what it was organized to do.

Westland relies on Comer v. State Tax Commission, 41 N.M. 403, 69 P.2d 936 (1937). *Comer* was a commission agent for Phillips Petroleum Company only. He was not the owner or operator of a business, but merely an employee acting as manager or agent for the principal who was engaged in business. Comer was, therefore, not taxable. There was a concurring and a dissenting opinion. The majority gave the taxpayer the benefit of statutory interpretation. We do not believe that Westland falls into the classification of a commission agent. It is an independent corporation, organized for business purposes. It differs from *Comer* because it exercises a corporate power and services three corporations from which it receives money for its own benefit and advantage.

■ We agree that Westland acted as a "bookkeeper" in one respect for the three corporations if it is shown that Westland put monies received from the three corporations in one pocket and used a sufficient sum to pay their obligations out of the other pocket to save expenses for the three corporations. Although this is an "activity," it is not an engagement in business because it is not a gain, benefit, or advantage to Westland. But Westland

was engaged in business for itself, because its services to the three corporations constituted an "activity" for which it was organized.

The following cases support our position that Westland was engaged in business: Shelburne Sportswear, Inc. v. City of Philadelphia, 422 Pa. 199, 220 A.2d 798 (1966); Bonnar-Vawter, Inc. v. Johnson, 157 Me. 380, 173 A.2d 141 (1961), and Colway Realty Corp. v. Commonwealth, 198 Va. 1, 92 S.E.2d 271 (1956).

The definition of "engaging in business" under § 72–16A–3(E), supra, is definite and clear. Westland carries on an "activity with the purpose of direct or indirect benefit."

We, therefore, hold that Westland was engaged in business.

### (2) *Were the Monies Received by Westland Gross Receipts?*

The commissioner ruled, (1) that the monies received by Westland were " 'gross receipts' as that term is defined in Section 72–16A–3(E), N.M.S.A.1953 (Supp.1967), and * * * Section 72–16–2(D), N.M.S.A.1953 (Supp.1965) * * *"; and (2) that Westland "was performing services for consideration" and the monies received were "subject to the gross receipts tax imposed by the * * *" tax statutes. Westland makes two arguments under this point: (1) The legislature did not intend that all monies received by a legal entity for administrative and accounting services were gross receipts, and (2) Westland is not a "person" as "person" is defined by statute.

The reporting period involved is January 1, 1966 to November 30, 1968. Because of a change in the statutes, we must determine "gross receipts" for the period of January 1, 1966 to July 1, 1967, and from July 1, 1967 to November 30, 1968.

First, let us determine taxability from January 1, 1966 to July 1, 1967. Prior to July 1, 1967, gross receipts were defined in § 72–16–2(D), in part, as follows:

"D. 'Gross receipts' means the total sum, * * * received as *compensation for personal and professional services,* for the exercise of which a *privilege tax* is imposed by the Emergency School Tax Act, as amended, the total receipts of a taxpayer derived from trades, business, commerce." [Emphasis added.]

Section 72–16–4.10 imposed a 2% privilege tax on gross receipts "for any other business in which services (not professional) are performed *on a price or fee basis,*" [Emphasis added.]

Westland was a person defined by § 72–16–2(A). Westland performed personal services. Were these personal services taxable? We believe they are. The monies received by Westland and used in its own operation were "compensation for personal * * * services * * * performed on a price or fee basis." The monies received by Westland as agent or trustee of the three corporations and disbursed by it in the payment of debts or obligations owing by the three corporations are not compensation for personal services performed on fee basis.

Between July 1, 1967 and November 30, 1968, under the "Gross Receipts and Compensating Tax Act," effective July 1, 1967, "Gross Receipts" is redefined. " 'Gross receipts' means the total amount of money or the value of other consideration, received * * * from performing services in New Mexico,". Section 72–16A–3(F), N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1969). This section also states:

"In an exchange in which the money or other consideration received does not represent the value of the property or service exchanged, 'gross receipts' means the reasonable value of the property or service exchanged."

It also defined "service" which "means all activities engaged in for other persons

**34**

for a consideration, which activities involve primarily the performance of a service as distinguished from selling property." Section 72–16A–3(K), N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, Supp.1969), amended 1969.

Section 72–16A–5 provides in part:

"To prevent evasion of the gross receipts tax and to aid in its administration, it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax."

Westland was engaged in business and performed services for three other corporations from July 1, 1967 to November 30, 1968, the reporting period involved. The presumption that all receipts of Westland are subject to the gross receipts tax is met by the record of operation. The consideration paid Westland for services rendered, or the reasonable value of the service, was that sum of money received by it for services rendered to the three corporations. Westland acts as a "friendly agent" for the three corporations only for receiving and paying out sums for debts or obligations owing by the three corporations. On this point, Westland is supported by Colway Realty Corp. v. Commonwealth, 198 Va. 1, 92 S.E.2d 271 (1956); City of Los Angeles v. Clinton Merchandising Corp., 58 Cal.2d 675, 25 Cal.Rptr. 859, 375 P.2d 851 (1962). Compare Corbett Inv. Co. v. State Tax Commission, 181 Or. 244, 181 P.2d 130 (1947).

We, therefore, remand this case to the Commissioner of Revenue, (1) to make further findings on the use of the monies received by Westland from the other three corporations; (2) and determine whether all monies received by Westland are gross receipts and subject to tax.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.