548 P.2d 454

Lucille EALEY, d/b/a T & L Ceramics,
Appellant,

v.

BUREAU OF REVENUE of the State of
New Mexico, Appellee.

No. 2040.

Court of Appeals of New Mexico.

Dec. 9, 1975.

Certiorari Granted Jan. 12, 1976.

Byron Caton, Caton & Hynes, Farmington, for appellant.

Toney Anaya, Atty. Gen., Vernon O. Henning, Bureau of Revenue, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

HERNANDEZ, Judge.

This case represents an appeal from the order of the Commissioner of the Bureau of Revenue, pursuant to § 72–13–39, N.M. S.A.1953 (Supp.1973). This appeal followed a formal hearing held on March 14, 1975, at which time appellant-taxpayer challenged the Bureau's denial of her request for a refund of gross receipts taxes paid to the State of New Mexico.

The taxpayer operates a telegraph office in Farmington, New Mexico as agent for Western Union. Her duties under the contract with Western Union include the acceptance and transmission of telegraph messages, the destination of which is outside Farmington, and the receipt and delivery of incoming messages to addresses in Farmington. In the latter case, the taxpayer mails or phones the message. Very few messages are hand-delivered. Approximately eighty-five per cent (85%) of the telegraph messages are transmitted interstate; fifteen per cent (15%) of the business is intrastate. Western Union owns the equipment and pays for the Farmington city license which authorizes the operation of the office in Farmington.

For her services, the taxpayer is compensated at the rate of seventy cents (70¢)

per message, regardless of origin, destination, length of message, or method of delivery. Western Union pays no operating expenses. The taxpayer testified she paid individual income tax on the total amount of commissions paid to her by Western Union for her services throughout the year.

The Bureau of Revenue in its Decision and Order found that the taxpayer is obligated to pay New Mexico's gross receipts tax insofar as she performs services in New Mexico; accordingly, her activities fall within the definition of "gross receipts" in § 72–16A–3(F), N.M.S.A.1953 (Supp. 1973). The Bureau denied the applicability of § 72–16A–14.10, N.M.S.A.1953 (Supp. 1973), to taxpayer's case.

■ Appellant-taxpayer claims the refund on the grounds that she is exempt from paying New Mexico's gross receipts tax under both provisions of § 72–16A–14.10, supra. This section provides:

"Receipts from transactions in interstate commerce may be deducted from gross receipts to the extent that the imposition of the gross receipts tax would be unlawful under the United States Constitution.

"Receipts from transmitting messages or conversations by telegraph, telephone or radio other than from one point in this state to another point in this state may be deducted from gross receipts."

It is my opinion that the deduction provided for in the second part of the statute is dispositive of this appeal on two grounds.

The first ground is statutory construction. The rule of statutory construction laid down by the Supreme Court in *In re Cox' Estate,* 57 N.M. 543, 260 P.2d 909 (1953) is followed here. The court in that case stated: "We must assume that the legislature means just what the words it uses mean, and that it chose its words advisedly to express its meaning until the contrary clearly appears." See also *Valley Country Club, Inc. v. Mender,* 64 N.M. 59, 323 P.2d 1099 (1958).

Clearly, the second provision of § 72–16A–14.10, supra, encompasses receipts from the taxpayer's activities. I assume the legislature said what it meant to say.

■ The second ground centers on the taxpayer's status as an agent of Western Union. The Commissioner found in his Decision and Order that:

"1) The taxpayer is a telegraph operator working under contract with Western Union Telegraph Company . . . . The taxpayer is an agent of Western Union.

"5) As agent for Western Union, the taxpayer initiates the transmittal of messages (including money orders) interstate for customers who wish to utilize Western Union telegraph services.

"8) All moneys received by the taxpayer from customers are received by taxpayer as agent for Western Union and all such moneys are delivered to Western Union by depositing such money in a Western Union bank account. The taxpayer does not withhold or retain any portion of such moneys."

The telegraph equipment is owned by Western Union. The taxpayer is under contract with Western Union which is clearly designated an "Agency Agreement" for the services she performs for this company. Her business, in this context, is inseparable from that of Western Union's. The Commissioner agrees that Western Union is entitled to the deduction provided for by § 72–16A–14.10 supra.

The case heavily relied upon by the Bureau to support its position is readily distinguishable from the case at hand. In *Spillers v. Commissioner of Revenue,* 82 N.M. 41, 475 P.2d 41 (Ct.App.1970), the equivalent of the first section of § 72–16A–14.10, supra, applying to the unconstitutional taxation of interstate commerce by the states was argued by the appellant-taxpayer. This case involved the transportation of goods in interstate commerce. This court stated:

" . . . [I]t is our conclusion that the receipts to be deductible must result from an act or acts of transportation as distinguished from receipts derived from the

negotiation of an agreement under which transportation may result. This statute is not sufficiently broad in language when considered under the rule of strict construction to authorize a deduction of receipts from the initiation of an agreement for transportation."

This court in that case found a separate, local activity, to-wit: the "booking" of interstate contracts.

The taxpayer in the instant case not only "books" interstate contracts, she executes the contract by pushing the button that results in the transmission of interstate messages. She receives messages from out-of-state which are transmitted to Farmington. The Albuquerque control center is a relay station in the process of the transmission of telegraph messages. Once a telegram is transmitted bound for an interstate destination it becomes part of the national network of telegraph communications. Each separate mode of relay or transmission cannot be isolated and taxed as a local incident. There is no separate, local activity for which the taxpayer is responsible.

We reverse.

IT IS SO ORDERED.

WOOD, C. J., dissenting.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

I concur in the result only.

The Commissioner decided and ordered that:

4) The taxpayer's only place of business is in Gallup, New Mexico, and all of her activities take place in Gallup.

The Commissioner has no authority to transplant the taxpayer from Farmington to Gallup, New Mexico.

The Commissioner decided and ordered that:

2) The taxpayer is a telegraph operator working under contract with Western Union Telegraph Company, . . . .

The taxpayer is an agent of Western Union.

A. *An agent of Western Union is not taxable.*

The issue to decide is: Can the Commissioner transform the services of an agent for Western Union, by way of transmogrify, into a business engaged in by her, when Western Union transmits and receives interstate messages via an Albuquerque control office? The answer is "No."

As an agent, the taxpayer agreed: (1) to operate a Western Union teleprinter in her office in Farmington, (2) to accept messages from the public in Farmington for transmission out-of-state through an Albuquerque control office of Western Union, (3) to accept out-of-state messages from the Albuquerque control office and deliver them to the public in Farmington, (4) to provide adequate area and appropriate counter and display space for conduct of Western Union business. For these services, the taxpayer received seventy cents per message sent or received.

The teleprinter acts as the transmitter. The electrically controlled typewriters in Farmington and Albuquerque are connected by an electrical circuit. When a key is struck on one of the typewriters, an electrical connection causes the corresponding key to be struck on the distant machine. The message then comes in typewritten form on a printed tape.

When messages are sent to the Albuquerque control office for interstate transmission, the tape is taken off the Farmington-Albuquerque typewriter and placed on another teleprinter connected with an out-of-state point. The same procedure occurs for messages transmitted from out-of-state points to Farmington.

What is the legal relationship between a principal and agent in the conduct of business?

"Agency" is defined in 3 Am.Jur.2d Agency, § 1, as follows:

The term "agency," as it is understood in the law and as used in this article, may

be defined as a fiduciary relationship by which a party confides to another the management of some business to be transacted in the former's name or on his account, and by which such other assumes to do the business and render an account of it. Thus, the term "agency," in its legal sense, always imports commercial or contractual dealings between two parties by and through the medium of another.

"Unquestionably, insofar as an agent's acts are within his authority they are in legal contemplation the acts of the principal." *Ronald A. Coco, Inc. v. St. Paul's Methodist Church,* 78 N.M. 97, 99, 428 P.2d 636, 638 (1967). "He is the servant or employee of the principal". *Comer v. State Tax Commission of New Mexico,* 4 N.M. at 408, 69 P.2d at 939, infra. "Fundamentally, and according to both the Restatement and the American courts, there is no distinction to be drawn between the liability of a principal for the tortious act of his agent and the liability of a master for the tortious act of his servant." 3 Am. Jur.2d Agency, § 267.

The taxpayer owned and operated T & L Ceramics as a ceramics shop which made greenware and sold paints for the ceramics. She was engaged in this business. She operated the Western Union business as the medium between the public and Western Union.

She was not engaged in the telegraphic business, nor did she perform such services in New Mexico for the purpose of direct or indirect benefit for herself. She was performing services only for Western Union.

The Commissioner relies on § 72–16A–3 (F). One pertinent paragraph reads:

"Gross receipts", for the purposes of *the business* of buying, selling or promoting the purchase, sale . . . as *agent* . . . on a commission or fee basis, of any . . . *service,* . . . includes only the total commissions or fees derived from the business; [Emphasis added].

Similar language was interpreted in *Comer v. State Tax Commission of New Mexico,* 41 N.M. 403, 69 P.2d 936 (1937). Comer was a commission agent for Phillips Petroleum Company. He was not the owner or operator of a business. He was merely an employee acting as manager or agent for the principal who was engaged in business. Comer was, therefore, not taxable. The Court said:

In every instance the tax is levied against *the business of an owner or operator,* and not against the employee acting as manager or agent for the principal who is "engaged in business." [Emphasis by Court]. [41 N.M. at 406, 69 P.2d at 938].

See, *Westland Corporation v. Commissioner of Revenue,* 83 N.M. 29, 487 P.2d 1099 (Ct.App.1971) where *Comer* is distinguished.

The taxpayer in the instant case falls within the *Comer* doctrine.

The Commissioner relies on *Markham Advertising Co. v. Bureau of Revenue,* 88 N.M. 176, 538 P.2d 1198 (Ct.App.1975). The taxpayer posted messages for out-of-state advertisers on billboards located only in New Mexico. This Court held:

Taxpayer's service is simply to post messages on billboards located in this state. It is being taxed for displaying, not for advertising. This service is intrastate in character, and thus subject to the gross receipts tax. [538 P.2d at 1199].

*Markham Advertising Co.* was not an agent of the national out-of-state advertiser. It was an independent New Mexico business contractor engaged solely in intrastate services.

The Commissioner contends that *Spillers v. Commissioner of Revenue,* 82 N.M. 41, 475 P.2d 41 (Ct.App.1970), is dispositive of this case.

Spillers was a common carrier engaged in transporting household goods. *Spillers performed pursuant to a certificate of convenience and necessity issued by the State of New Mexico.* Intrastate transpor-

tation and services was its business. Where such transportation and services involved interstate commerce, Spillers acted as a *franchised agent* under contract with Bekins Van Lines Co. of Hillsdale, Illinois, which is authorized to transport household goods in interstate commerce. Spillers received twenty percent of the transportation proceeds for having initiated an interstate order and a percentage of proceeds for additional services performed in connection with transportation.

Spillers was taxable because he was "engaged in the business" of being an agent under § 72–16A–3(F).

B. *The deductible statute is not applicable.*

Section 72–16A–14.10, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, 1973 Supp.) reads:

Receipts from transactions in interstate commerce may be deducted from gross receipts to the extent that the imposition of the gross receipts tax would be unlawful under the United States Constitution.

Receipts from transmitting messages or conversations by telegraph, telephone or radio other than from one point in this state to another point in this state may be deducted from gross receipts.

This statute is not applicable in this case. The taxpayer does not transmit messages by telegraph. Western Union does. The Commissioner admits, however, that if the taxpayer were an employee of Western Union, receipts from messages transmitted by her would be deductible under this statute. The taxpayer is an employee. This is another example of where the Commissioner "extorts taxes like a pickpocket." *Co-Con, Inc. v. Bureau of Revenue*, 87 N.M. 118, 125, 529 P.2d 1239 (Ct.App.1974) (Sutin, J., dissenting).

C. *A taxpayer is entitled to a fair interpretation of the law and the facts.*

In *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950),

Mr. Justice Jackson set the stage for criticism of administrative agencies which conduct hearings not in conformity with the Administrative Procedures Act. He quoted at length from committee reports of administrative management. One of them is requoted.

"A genuinely impartial hearing, conducted with critical detachment, is psychologically improbable if not impossible, when the presiding officer has at once the responsibility of appraising the strength of the case and of seeking to make it as strong as possible. Nor is complete divorce between investigation and hearing possible so long as the presiding inspector has the duty himself of assembling and presenting the results of the investigation. . . ." [339 U.S. at 44, 70 S.Ct. at 451].

Criticism of the Commissioner's performance of duty has been stated many times. *Co-Con, Inc.*, supra (Sutin, J., dissenting); *Gathings v. Bureau of Revenue*, 87 N.M. 334, 533 P.2d 107 (Ct.App.1975) (Sutin, J., dissenting); *Cardinal Fence Co., Inc. v. Commissioner, Bureau of Revenue*, 84 N.M. 314, 502 P.2d 1004 (Ct.App.1972) (Sutin, J., dissenting); *Title Services, Inc. v. Commissioner of Revenue*, 86 N.M. 128, 520 P.2d 284 (Ct.App.1974) (Sutin, J., dissenting); *Torridge Corporation v. Commissioner of Revenue*, 84 N.M. 610, 506 P.2d 354 (Ct.App.1973) (Sutin, J., dissenting).

In such cases, the Commissioner's decisions are affirmed in this Court because it interprets the statute and the evidence against the taxpayers with antagonistic eyes. The taxpayer is entitled to surcease from taxation, free from a partial hearing before the Commissioner, when his case sits outside the "warp and woof" of the statute. For almost two hundred years we have shouted that "the power to tax is the power to destroy."

The decision of the Commissioner should be reversed.

WOOD, Chief Judge (dissenting).

Judge Hernandez correctly points out that the issue is whether the taxpayer is entitled to the deduction stated in § 72–16A–14.10, supra. No issue is raised as to whether the taxpayer's commissions are gross receipts under § 72–16A–3(F), supra. Judge Sutin's discussion of *Comer v. State Tax Commission of New Mexico*, 41 N.M. 403, 69 P.2d 936 (1937) is not applicable to the issues raised in this appeal.

Nor is there any issue raised as to the taxpayer's status. She does not contend that she is an employee of Western Union. Her position throughout has been that she was an agent. She claims she is entitled to the deduction provided by § 72–16A–14.10, supra, because the agents of Western Union are inseparable from the company. Whether this is so need not be answered in this case.

The gross receipts tax which the taxpayer claims should be refunded is the tax paid on her commissions from Western Union. She claims that a gross receipts tax on her commissions is a tax on the transmission itself; that her activities are integral to the single process of transmitting messages.

There is evidence that the messages transmitted by taxpayer from Farmington go no farther than Albuquerque. The message goes on another machine in Albuquerque; the Albuquerque office relays the message to another station. Admittedly there is conflicting evidence. Where there are conflicting inferences from the evidence, the Commissioner's ruling is binding. *Archuleta v. O'Cheskey*, 84 N.M. 428, 504 P.2d 638 (Ct.App.1972). There is evidence to support the Commissioner's finding that taxpayer initiates the transmission of messages by sending them to Albuquerque where the messages are redirected. This finding supports the ruling that taxpayer is not entitled to a deduction under § 72–16A–14.10, supra. Why? Because taxpayer is not transmitting messages outside of New Mexico.

I would affirm on the basis of *Spillers v. Commissioner of Revenue*, 82 N.M. 41, 475 P.2d 41 (Ct.App.1970). Accordingly, I dissent from the result reached by the majority.