## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Edward P. Whelan, III

v.

Spotsylvania County Planning Commission

January 11, 1989

Case No. L-88-368

By JUDGE WILLIAM H. LEDBETTER, JR.

Edward P. Whelan, III, has petitioned for a writ of mandamus to compel the Spotsylvania County Planning Commission to process his application for subdivision plat review and approval "in accordance with the policies and procedures existing on April 12, 1988," the date Whelan submitted his application. The Commission has filed an answer and a motion for summary judgment.

A hearing was held on the summary judgment motion on December 19, 1988, and counsel have filed memoranda. Admissions, primarily related to documentary exhibits, provide the evidentiary basis for the motion.

This opinion addresses the Commission's motion.

For a full understanding of the factual background of this controversy, a detailed chronological narrative is necessary.

Whelan purchased the property, containing 519 acres, in April of 1988. Shortly thereafter, on April 12, 1988, he submitted to the County an application for preliminary plat review and approval pursuant to § 16-91 et seq. of the County Subdivision Ordinance. *See also* Virginia Code Section 15.1-475. With his application, Whelan submitted

a plat of his proposed subdivision showing 356 lots for single-family residential units. The plat, labelled "Preliminary Subdivision Plat," dated April 8, 1988, was prepared by David E. Delew of Fredericksburg, a certified land surveyor. The appropriate filing fee was paid.

Between April 27th and June 15th, the application was reviewed and discussed by the Commission. At one of the meetings during this period, the Commission noted "some confusion over the items . . . asked for . . ." and tabled consideration of the plat. In response, Whelan submitted additional information on June 7th and changed the name of the proposed subdivision from "Rolling Woods" to "Whelan Ridge." On June 15th, the Commission voted 6 to 1 to treat the plat as an optional, non-binding "preliminary sketch" under § 16-83 of the Ordinance. Because there is no fee associated with an informal review of a "preliminary sketch," Whelan's filing fee was refunded.

Meanwhile, the County Board of Supervisors was considering amendments to its zoning ordinance. One of the revisions under consideration was an amendment to § 18-53 of the County Zoning Ordinance which would require a three-acre minimum lot size in subdivisions not served by public sewer. After a public hearing, the Board adopted the amendment to § 18-53 on May 24, 1988.

Whelan's proposed subdivision is not served by public sewer. Many of the lots in Whelan's proposed subdivision are shown on the plat to be less than three acres. Therefore, as of May 24, 1988, the proposed Whelan Ridge Subdivision does not meet the requirements of the zoning ordinance.

### No Grandfather Clause

Section 18-53 of the County Zoning Ordinance was previously amended in 1986 and 1987. On both occasions, the amendments contained a specific grandfather clause which provided that the amendments did "not apply to any preliminary sketch, plan or plat, or section thereof, which has been submitted to the Planning Commission on or before the effective date" of such amendment.

Obviously, if the 1988 zoning amendment contained a similar grandfather clause, Whelan's plat, which was submitted more than a month before the effective date of the amendment, would be "saved" from the applicability

of the new lot size requirement. However, the 1988 amendment does *not* contain any sort of grandfather clause.

## Vested Right

Absent a grandfather clause, or "saving" provision, in the zoning amendment itself, the applicability of such a zoning change to a particular parcel of land depends upon state decisional law. The issue comes up in various contexts, and the question generally is framed as follows: When does a landowner acquire a "vested right" to use his land in a particular manner, notwithstanding the adoption of a zoning law prohibiting or restricting such use?

For most purposes, zoning laws have no retroactive effect; in other words, they speak prospectively. However, it is well settled that landowners have no vested right to continuity of zoning, and the mere purchase of land does not create a right to rely on existing zoning. *Vienna Council v. Kohler*, 218 Va. 966 (1978).

The twin Fairfax County cases, decided by the Virginia Supreme Court in 1972, are readily distinguishable. In those cases, the court ruled that the landowners had vested rights to the land use that they were pursuing in good faith before a change in zoning and ordered approval of the site plans and issuance of building permits. *Fairfax County v. Medical Structures, Inc.*, 213 Va. 355 (1972), and *Fairfax County v. Cities Service Oil Company*, 213 Va. 359 (1972). In *Medical Structures*, the landowner had obtained a special use permit, had filed a site plan in compliance with the County ordinance, and had spent almost $60,000.00 for site preparation and architectural plans in reliance upon the use permit. Under those circumstances, the Court held that the landowner had a vested right to the land use described in its use permit. In *Cities Service*, the landowner had obtained a special use permit, had expended "substantial sums" for site plan preparation, and had filed its site plan in compliance with the County ordinance. Under circumstances almost identical to those in *Medical Structures*, the Court held that the landowner had acquired a vested right to the land use described in its use permit. Therefore, in each case, the Court found sufficient evidence that the landowner had "substan-

tially changed its position" in good faith reliance on the existing zoning, so that it could not be deprived of the use to which the property was already committed by subsequent legislation that "down-zoned" the property and significantly diminished its value.

Here, the pleadings, the evidence (i.e., the admissions), and presentations at the December 19th hearing establish that Whelan has not substantially changed his position in reliance on existing zoning laws. He purchased the property and paid a surveyor to plat the land. In fact, the plat submitted for review and approval was found to be inadequate by the Commission's subdivision ordinance administrator and by the commission itself. Whelan obtained no use permit, no building permit, nor was any other governmental action take under the old zoning law upon which Whelan relied to his detriment.

This court is of the opinion that the submission of a preliminary plat, whether adequate or not, without more, does not confer a vested right upon a landowner to use his property as shown on the plat. As noted above, there is no vested right to continuity of zoning; without some substantial change of position in reliance on the existing zoning, such as the issuance of a use permit as in the *Medical Structures* and *Cities Service* cases, zoning changes are applicable prospectively to all landowners within the purview of the legislation.

### Arbitrary and Capricious Action; Unequal Treatment

Whelan also argues that the Commission's failure (or refusal) to approve his subdivision plat constitutes an arbitrary and capricious abuse of power by the Commission. The treatment given his plat, he says, was different from the manner in which the Commission reviewed and acted upon other similar plats during the same time period. Therefore, according to Whelan, he was denied equal and uniform application of the County's land use laws.

At this stage of the case, and for purposes of the court's ruling on the Commission's motion, the allegations in the pleadings are assumed to be true. It is axiomatic that government cannot apply its laws unequally, arbitrarily and without uniformity. Therefore, if Whelan can carry his burden of proof and establish that the Commission

singled out his plat for a treatment different than that afforded other similar plats during the pendency of the zoning amendment process, the action or inaction of the Commission may be deemed arbitrary and capricious, thereby entitling him to issuance of the writ which he seeks.

### Summary Judgment

Summary judgment is appropriate if it appears from the pleadings, admissions, the evidence, if any, and pretrial orders, if any, that no material fact is genuinely in dispute. Rule 3:18. The rule applies only to cases in which no trial is necessary because no evidence, or additional evidence, could affect the result. *Carwile v. Richmond Newspapers, Inc.*, 198 Va. 1 (1954). Summary judgment may be entered as to the undisputed portion of a contested claim.

In this case, it is clear from the pleadings and admissions that Whelan acquired no vested right to a one-acre minimum lot size prior to the May 24th change in the zoning law. No material fact is in dispute regarding the things that Whelan did and attempted to do under the former zoning classification, and the legal principles explained above negate his claim of vested right under these circumstances. Accordingly, the motion for summary judgment will be granted as to that portion of Whelan's claim.

As for Whelan's claim that the Commission did not discharge its functions in an equal and uniform manner, and thus acted arbitrarily and capriciously with respect to his plat, the motion will be overruled and denied. This portion of Whelan's claim cannot be adjudicated without evidence; and, obviously, the facts are in dispute.