474 P.2d 510

**FIELD ENTERPRISES EDUCATIONAL CORPORATION, a Delaware corporation, Appellant,**

v.

**COMMISSIONER OF REVENUE, State of New Mexico, Appellee.**

**No. 473.**

Court of Appeals of New Mexico.

Sept. 4, 1970.

John A. Mitchell, Mitchell, Mitchell & Alley, Santa Fe, for appellant.

James A. Maloney, Atty. Gen., Richard J. Smith, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Judge.

The taxpayer has appealed from the following portion of a Decision and Order of the Commissioner entered January 16, 1970:

"The protest as to the $5,102.20 portion of Assessment Number 89254 is hereby denied. This assessment is to be enforced insofar as it reflects amounts of tax due on finance service charges applied on unpaid balances due from sales to residents of the State of New Mexico. Under this assessment the compensating tax applies for period prior to July 1, 1967, and either the compensating tax or the gross receipts tax applies for the period subsequent to July 1, 1967. Such charges constitute 'time-price differential' within the meaning of the Compensating Tax Act of 1939, as amended, and the Gross Receipts and Compensating Tax Act."

The taxpayer takes the position that under the facts of this case the service charges are not taxable under either of the stated Acts. We agree and reverse the foregoing quoted portion of the Decision and Order.

We quote the following material portions of the Stipulation of Facts:

"1. Taxpayer is, and at all times material hereto has been, engaged in the business of publishing educational books and related products, orders for which are received and accepted by Taxpayer in its office at Merchandise Mart Plaza, Chicago, Illinois. The purchasers of such books and products are situated throughout the various states of the United States, including New Mexico.

"2. Taxpayer at all times material hereto did not own any property or maintain any office or other place of business in the State of New Mexico.

"3. Taxpayer at all times material hereto was not qualified to do business in the State of New Mexico.

"4. During the Reporting Period and to date, salesmen in New Mexico operating on a commission basis have solicited orders on behalf of the Taxpayer for the Educational Materials from persons in New Mexico. Every such order has been forwarded to the Taxpayer in Chicago, Illinois, where it has been reviewed and then either accepted or rejected. If the order is rejected, the Taxpayer notifies the person making the order of its rejection and no further action is taken on it. Accepted orders are shipped directly to the purchaser, F.O.B. from Taxpayer's binderies in Crawfordsville, Indiana, Chicago, Illinois, Willard, Ohio, or Kingsport, Tennessee.

"* * *

"10. The educational books and related products published by Taxpayer are typically sold to customers in installment sales transactions. The sales price in a given transaction does not include interest, or any other time price differential, and at the time property enters New Mexico no service fee is due. Taxpayer does collect a service charge of 1 per cent per month on the actual outstanding balance due from the sales to residents of New Mexico, who may, at any time, pay all or any portion of the balance due and thereby prevent application of future service charges on the amount paid.

"11. The aforementioned service charge is under no circumstance pre-computed, but rather is computed each month determined by the unpaid balance of each customer's account."

▆ Under his first point, the taxpayer urges that the service charges are not part of the "sales price" of property within the meaning and definition thereof under the Compensating Tax Act of 1939, as amended, which was repealed effective July 1,

1967. The material portions of this Act were as follows:

"72–17–1. *Title of act—Purpose.*— This act [72–17–1 to 72–17–30] may be cited as the Compensating Tax Act of 1939. The primary purpose of this act is declared to be to protect, so far as is practicable, the merchants, dealers and manufacturers of New Mexico who operate under the excise tax laws of this state, and who meet the requirements of such laws, against the unfair competitions of importations into New Mexico, without the payment of a sales tax, of goods, wares and merchandise."

"72–17–3. *(Supp.1963). Tax on tangible personal property stored, used or consumed in state.*—An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased from a retailer on or after July 1, 1939, and stored, used or consumed in this state at the rate of three per cent [3%] of the *sales price* of such property; * * *." [Emphasis added.]

"72–17–2. *Definitions.*—The following words, terms and phrases, when used in this act [72–17–1 to 72–17–30], have the following meaning, except where the context clearly indicates a different meaning:

" * * *

"(d) 'Sales price' means the total amount for which *tangible personal property* is sold, including any services that are a part of the sale, valued in money, whether paid in money or otherwise, and includes any amount for which credit is given to the purchaser by the seller, without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or service cost, interest charged, losses or any other expenses whatsoever, * * *." [Emphasis added.]

As shown by the written contract between the taxpayer and purchasers, and as conceded by the Commissioner, the sale of the tangible personal property here involved was consummated at the foregoing named points outside New Mexico, when and where the property was delivered, F.O.B. for shipment directly to the purchasers. See in accord §§ 50A–2–319 and 50A–2–401, N.M.S.A.1953 (Repl. 8, pt. 1). The sales price was evidenced by a written contract entered into prior thereto. This contract showed the amount, or price, to be paid for each item of tangible personal property purchased, the amount of the tax (if any) thereon, the total of these prices and taxes, the amount of any down payment, and the "balance to pay." The contract also provided: " * * * A service charge of 1% per month on the outstanding balance shall be added to my [purchaser's] account at each monthly billing date. * * *"

The sole issue is whether this service charge of 1% per month was a part of the "sales price." This charge was not precomputed, no portion thereof was due when the sale was completed, and no portion thereof ever became due, unless the purchaser elected to pay the balance owing in installments. If payments were made in installments, then the service charge was computed each month on the basis of the then unpaid balance.

The Compensating Tax Act of 1939, as amended, made no express reference to a "time-price differential," which the Commissioner decided and ordered was the nature of the service charge. If a "time-price differential" is implicit within the contemplation of the Act, and particularly within the definition of "sales price," we are still not concerned therewith in this case. It is expressly stipulated: " * * * The sales price in a given transaction does not include interest, or any other time price differential, * * *."

Regardless of this apparent inconsistency between the Commissioner's Decision and Order and the stipulated facts, we are of the opinion the service charge was not a part of the "sales price." The sales price of the property in question was not determined by the subsequently rendered services, or changed by the charges therefor. The contractual right of purchasers to make

payments in installments may have induced many of them to enter into contracts with the taxpayer, but this did not make the agreed charges for the services rendered by the taxpayer, upon the exercise by the purchasers of this right, a part of the "sales price." The service charges were not a part of the " * * * total amount for which [the] tangible personal property [was] sold, * * *." The amount for which the property was sold was the same regardless of whether the purchasers did or did not choose to make installment payments. If they elected to make payments in installments after the consummation of the sale, then, and only then, were the service charges computed and charged to the purchasers in accordance with the agreement. The purchasers received from the taxpayer for these charges the benefits of additional services and expenses necessarily connected with the additional bookkeeping and billings. These additional services and expenses were not a part of the previously accomplished sale, and the charges therefor, arrived at by the contractual method of computation, in no way changed or affected the contractually determined sales price of the tangible property sold.

: ▉▉ At least the language of the statute, as applied to the facts of this case, is clearly susceptible of the interpretation we place thereon, and this interpretation thereof makes doubtful the inconsistent interpretation placed thereon by the Commissioner. Any doubtful meaning or intent of a tax statute must be resolved against the State and in favor of the taxpayer. We cannot extend the applicability of the statute beyond a clear import of the language used therein. United States v. Merriam, 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240 (1923); Standard Oil Co. of Indiana v. State Tax Com'r, 71 N.D. 146, 299 N.W. 447 (1941). See also United States Gypsum Company v. Green, 110 So.2d 409 (Fla. 1959); Dain Mfg. Co. v. Iowa State Tax Commission, 237 Iowa 531, 22 N.W.2d 786 (1946); New Mexico Electric Service Co. v. Jones, 80 N.M. 791, 461 P.2d 924 (Ct. App.1969).

We have considered the following cases relied upon by the Commissioner: Union Oil Co. of California v. State Board of Equalization, 60 Cal.2d 441, 34 Cal.Rptr. 872, 386 P.2d 496 (1963); State v. Natco Corporation, 265 Ala. 184, 90 So.2d 385 (1956); O'Kelley-Eccles Company v. State, 160 Cal.App.2d 60, 324 P.2d 683 (1958); Schemmer v. Iowa State Tax Commission, 254 Iowa 315, 117 N.W.2d 420 (1962); Rena-Ware Distributors, Inc. v. State, 463 P.2d 622 (Wash.1970); Peterson Tractor Co. v. State Board of Equalization, 199 Cal.App.2d 662, 18 Cal.Rptr. 800 (1962). Neither the holding nor the rationale of the decision in any of these cases is inconsistent with our holding or reasoning.

▉▉ Under its second point, the taxpayer urges that the "SERVICE CHARGES ARE NOT A 'TYPE OF TIME-PRICE DIFFERENTIAL' * * *" within the meaning of the Gross Receipts and Compensating Tax Act. The applicable provisions of this Act are:

"*72-16A-2. Purpose.*—The purpose of the Gross Receipts and Compensating Tax Act [72-16A-1 to 72-16A-19] is to provide revenue for public purposes by levying a tax on the privilege of engaging in certain activities within New Mexico and to protect New Mexico businessmen from the unfair competition that would otherwise result from the importation into the state of property without payment of a similar tax."

"*72-16A-7. Imposition and rate of tax —Denomination as 'compensating tax.'*— A. For the privilege of using property in New Mexico, there is imposed on the person using property an excise tax equal to four per cent [4%] of the value, at the time of acquisition or of introduction into the state, whichever is later, * * *."

"*72-16A-8. Presumption of taxability and value.*—A. To prevent evasion of the compensating tax and the duty to collect it, it is presumed that property bought or sold by any person for delivery into this state is bought or sold for a taxable use in this state.

"B. In determining the amount of compensating tax due on the use of property, it is presumed, in the absence of preponderant evidence of another value, that the value means the total amount of money, including any type of time-price differential, or the reasonable value of other consideration paid for property, including any service that is a part of the sale of the property. * * *"

It is apparent from what has been said above concerning the time and place of the consummation of the sale, that the time of computing the value of the property with which we are here concerned was when the property entered, or was introduced into, New Mexico, which was subsequent to the sale. Section 72–16A–7, supra. As shown by the stipulation above, no service charge had been computed when the property entered the State, and none was then due or owing. The value of the property as of that time was the stated sales price, or cost of the property to the purchaser as shown by the written contract.

The subsequently computed and imposed service charge for services subsequently rendered was not part of the value of the property as of the time it entered the State. At least this is a reasonable construction of the language of the statute, when considered in the light of its applicability or inapplicability to the service charge, and the statutory language does not clearly import the contrary construction placed thereon by the Commissioner. As above stated, all doubts as to the meaning and intent of a tax statute must be construed in favor of the taxpayer. United States v. Merriam, supra; Standard Oil Co. of Indiana v. State Tax Com'r, supra; New Mexico Electric Service Co. v. Jones, supra.

The Commissioner argues that since the statute provides "time-price differentials" are to be included as a part of the value of the property, the taxpayer is seeking an exemption therefrom, and has the burden of bringing itself clearly within the scope of the desired exemption. He relies upon Flaska v. State, 51 N.M. 13, 177 P.2d 174 (1946); Peisker v. Unemployment Compensation Commission, 45 N.M. 307, 115 P.2d 62 (1941) and Reed v. Jones, 81 N.M. 481, 468 P.2d 882 (Ct.App.1970). These cases do support the rule that exemptions and deductions from a tax act must be strictly construed in favor of the taxing authority, and any one claiming to come within an exemption, or to be entitled to a deduction, must clearly establish his right thereto. However, the question here presented is not one of exemption or deduction from the statute or the tax thereby imposed, but rather the applicability of the tax to the service charge in question. The fact that "time-price differential" is mentioned in the statute does not clearly show that a service charge, such as that here involved, is included therein, or that such a service charge, even if properly considered a "time-price differential," was a part of the value of the property at the time it was introduced into New Mexico.

It follows from what has been said that the portion of the Decision and Order appealed from must be reversed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.