489 P.2d 660

Lee R. DAVIS, d/b/a Sutherland Furniture & Appliance, Appellant,

v.

COMMISSIONER OF REVENUE of the State of New Mexico, Appellee.

No. 653.

Court of Appeals of New Mexico.

Aug. 6, 1971.

Rehearing Denied Sept. 7, 1971.

Certiorari Denied Oct. 6, 1971.

O. R. Adams, Jr., Adams & Zeikus, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., John C. Cook, Special Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

HENDLEY, Judge.

The Bureau made a deficiency assessment of gross receipts tax on Davis for State and Municipal tax. The assessment was based on Davis' failure to include "time price differentials" on credit sales which were made on installment contracts and sold to finance companies.

Although the retail installment contracts were made in Davis' name, the finance companies furnished the contract forms, approved credit of the purchasers before the contracts were executed, and then purchased the contracts by paying Davis the "Total Cash Sales Price" less the amount received by Davis as a down payment. Davis did not receive the "time price differential." That sum, if paid, was received by the finance company purchasing the contracts.

Davis protested the deficiency assessment on the grounds that he never received the money on which the deficiency assessment was based and that such a tax would be discriminatory and unconstitutional "* * * because his gross receipts would be taxed at more than the applicable tax rates and more than the receipts of other taxpayers."

We reverse.

Two assessments were made. One assessment was made under § 72–16–7, N.M.S.A.1953 (Repl.Vol.1961) [repealed Laws 1966, Ch. 47, § 22, July 1, 1967] and the other for the period after July 1, 1967, being under § 72–16A–3, subd. F, N.M.S.A.1953 (Repl.Vol., Supp.1969).

Those statutes read:

72–16–7 " * * * Provided, that in the event the seller or leaser [sic], who has so elected, transfers his interest in any such contract to some third person he shall pay the tax upon the full sale price of the commodity involved, unless a record is kept of payments thereafter made on such contracts in such manner that the bureau of revenue can at all times ascertain from the records of the seller the amount paid thereon by the purchaser. * * * "

72–16A–3 " * * * F. 'gross receipts' means the total amount of money or the value of other consideration, received from selling property in New Mexico, from leasing property employed in New Mexico or from performing services in New Mexico, and includes any type of time-price differential and receipts from sales of tangible personal property handled on consignment but excludes cash discounts allowed and taken.

"In an exchange in which the money or other consideration received does not represent the value of the property or service exchanged, 'gross receipts' means the reasonable value of the property or service exchanged.

"When the sale of property or service is made under any type of charge, conditional or time sales contract or the leasing of property is made under a leasing contract, the seller or lessor may elect to treat all receipts under such contracts as gross receipts as and when the payments are actually received. If the seller or lessor transfers his interest in any such contract to a third person, he shall pay the gross receipts tax upon the full sale or leasing contract amount.

" 'Gross receipts,' for the purposes of the business of buying, selling or promoting the purchase, sale or leasing, as factor, agent or broker, on a commission or fee basis, of any property, service, stock, bond or security, includes only the total commissions or fees derived from the business ; "

*Assessment Prior to July 1, 1967.*

The Bureau contends that although "full sale price" is not defined under the repealed law, "gross proceeds of sales" was defined by § 72–16–2, subd. E, N.M.S.A. 1953 (Repl.Vol.1961) [repealed Laws 1966, Ch. 47, § 22, July 1, 1967] which stated, in part:

" 'Gross proceeds of sales' means the sum or value proceeding or accruing from the sale of tangible personal property, * * * including any services that are a part of such sales * * *, whether received in money or otherwise, including all receipts, cash, credits and property of any kind or nature, and also the amount for which credit is allowed by the seller to the purchaser, * * * "

It is the Bureau's contention that under this section, which must be read with § 72–16–7, supra, that the clear legislative intent is to include "time price differential" as either " * * * services that are a part of * * * sales * * * " or " * * * the amount for which credit is allowed by the seller to the purchaser."

We cannot agree with either of the Bureau's contentions. We must view the legislative intent from the language of the Act and the words will be given their ordinary meaning unless a different intent is clearly indicated. Winston v. New Mexico State Police Board, 80 N.M. 310, 454 P. 2d 967 (1969). A reading of the full Act shows the legislative intent to be that taxes were to be assessed only on what was received or would be received. It is an undisputed fact that the assessment made was on a "time price differential" which never was, nor would be, received by Davis. Davis would only receive the down payment and the balance of the purchase price would be paid to him by the finance company. The finance company would then receive the "time price differential."

The Bureau's reliance on Field Enterprises Educational Corporation v. Commissioner of Revenue, 82 N.M. 24, 474 P.2d 510 (Ct.App.1970), is misplaced. Although *Field Enterprises Educational Corporation*

dealt with an undetermined and not pre-computed service charge, one thrust of the case is that the monies from the "service charge" which were not received were not taxable. As stated in *Field Enterprises Educational Corporation*:

"* * * The purchasers received from the taxpayer for these charges the benefits of additional services and expenses necessarily connected with the additional bookkeeping and billings. These additional services and expenses were not a part of the previously accomplished sale, and the charges therefor, arrived at by the contractual method of computation, in no way changed or affected the contractually determined sales price of the tangible property sold."

We cannot extend the applicability of the statute beyond a clear import of the language used. Field Enterprises Educational Corporation v. Commissioner of Revenue, supra.

*Assessment After July 1, 1967.*

We find the same foregoing reasoning applicable under the Gross Receipts and Compensating Tax Act, § 72–16A–1, N.M. S.A.1953 (Supp.1969) et seq. We fail to see the Bureau's construction as being reasonable in light of the stipulation that the taxpayer only received the down payment and the balance of the "Cash Sale Price" or "Total Cash Price" while the finance company received the difference between the "Cash Sale Price" or "Total Cash Price" and the "Total Time Balance." Compare *Field Enterprises Educational Corporation.*

We are not dissuaded from our decision by the language under § 72–16A–3, subd. F, supra, being changed from "full sale price" to "Full sale contract amount." We do not think the Legislature intended to tax that which was not received or never would be received. We believe this is evidenced by the fact that as a part of the "gross receipts" definition is the exclusion from taxation of "cash discount allowed and taken."

The Bureau contends its theory of taxing the "Time Balance" is consistent with its Regulation 3(E)–3. We disagree. The example set out in the Regulation contemplates a seller who carries his own contracts and after collecting for a period of time, sells the contracts. Such are not the facts of the instant case.

A fact of this case is that Davis would never receive any part of the "time price differential." This being so, no part of that differential was a gross receipt chargeable to Davis.

Having reached our decision, we do not discuss the taxpayer's equal and uniform taxation contention or the argument that taxpayer was the agent of the finance company in writing the contracts and that it was never contemplated that taxpayer would finance the purchasers.

Reversed.

It is so ordered.

WOOD, C. J., and SUTIN, J., concur.