497 P.2d 745

George TILL, Appellant,

v.

Franklin JONES, Commissioner of Revenue, State of New Mexico, Appellee.

Ken GASTON, Appellant,

v.

Franklin JONES, Commissioner of Revenue, State of New Mexico, Appellee.

Nos. 781, 782.

Court of Appeals of New Mexico.

March 17, 1972.

Rehearing Denied April 12, 1972.

Certiorari Denied May 24, 1972.

John C. Maine, Jr., William C. Marchiondo, McAtee, Marchiondo & Berry, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., Curtis W. Schwartz, John C. Cook, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

These cases, consolidated for the appeal, involve the liability of a horse owner and horse trainer for gross receipts tax on their share of winning purses received in connection with a horse race. Each reported gross receipts but protested any tax liability based on the receipts reported. The Commissioner denied the protests and each appealed directly to this court. Section 72–13–39, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1971).

The receipts involved for Gaston are for a winning purse paid to him as a horse owner. The receipts involved for Till are for a "customary" 10% of a winning purse paid to him as a horse trainer. The reporting periods for each are prior to the enactment of § 72–16A–12.28, N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, Supp.1971); thus, no exemption under that section is involved. The issues are whether: (1) the receipts are subject to the Gross Receipts Tax Act [Gross Receipts and Compensating Tax Act—§§ 72–16A–1 to 72–16A–19, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1971)]; (2) the receipts are for a taxable service; (3) there was a joint venture; (4) an administrative ruling was not in accordance with law; (5) the receipts were exempt under § 60–6–9, N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1971); and (6) the receipts were exempt under § 72–16A–12.7, supra.

*Whether the receipts are subject to the Gross Receipts Tax Act.*

The taxpayers contend "* * * the legislative history evidences a legislative intent that the receipts by horse trainers and horse owners from purses at New Mexico race tracks do not fall within the scope of the imposition of the gross receipts tax. * * *"

Legislative intent is determined primarily by the language of the act. Albuquerque Nat. Bank v. Commissioner of Revenue, 82 N.M. 232, 478 P.2d 560 (Ct.App. 1970). We review the statutory language. Section 72–16A–2, supra, states the purpose of the tax act "* * * is to provide revenue for public purposes by levying a tax on the privilege of engaging in certain activities within New Mexico. * * *" Section 72–16A–3, subd. E, supra, defines "engaging in business" to mean "* * * carrying on or causing to be carried on *any activity* with the purpose of direct or indirect *benefit.* * * *" [Emphasis added]. Section 72–16A–3, subd. F, supra, defines "gross receipts" to mean "* * * the total amount of money or the value of other consideration, received from * * * performing services in New Mexico. * * *" Section 72–16A–3, H., supra, defines "person," to include an individual, a joint venture or other entity. Sec-

**746**

tion 72–16A–4, supra, imposes a gross receipts tax " * * * on *any person* engaging in business in New Mexico." [Emphasis added]. Section 72–16A–5, supra, states: " * * * it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax. * * * " This language does not demonstrate a legislative intent to exempt the receipts in issue in this appeal.

Prior to the enactment of the Gross Receipts Tax Act (Laws 1966, ch. 47), the tax statute specifically applied to the gross receipts of any amusement enterprise, including horse shows and races. Section 72–16–4.8, N.M.S.A.1953 (Repl.Vol. 10, pt. 2). Because this wording is not specifically included in the Gross Receipts Tax Act the taxpayers assert that the Legislature did not intend to cover receipts from horse races. A specific itemization is not required. Legislative intent is determined primarily by the language of the act and that language, couched in general terms of "all receipts" of "any person," shows an intent to make the tax applicable to the receipts in question.

■ The taxpayers would apply various rules of construction in their effort to demonstrate an absence of legislative intent to tax the receipts. Judicial construction is not called for unless there is ambiguity or doubt as to the meaning of the tax statute. Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1965); Westland Corporation v. Commissioner of Revenue, 83 N.M. 29, 487 P.2d 1099 (Ct.App. 1971); New Mexico Electric Service Co. v. Jones, 80 N.M. 791, 461 P.2d 924 (Ct. App. 1969). In this case there is neither ambiguity nor doubt that the language used in the Gross Receipts Tax Act applies to the receipts in question. Since the "scope of the * * * gross receipts tax" (taxpayers' words) is unambiguous, judicial construction based on an asserted long standing administrative interpretation is not applicable. See State ex rel. Deikson v. Aldridge, 66 N.M. 390, 348 P.2d 1002

(1960); Valley Country Club, Inc. v. Mender, 64 N.M. 59, 323 P.2d 1099 (1958).

■ One aspect of the "construction" argument requires separate consideration. It is that the Legislature itself has construed the Gross Receipts Tax Act. This asserted legislative construction is based on the fact that in 1970 the Legislature enacted § 72–16A–12.28, supra. This section apparently provides an exemption for the receipts in question. The fact that an exemption was subsequently enacted does not show a legislative intent that the receipts were not subject to the gross receipts tax prior to enactment of the exemption. See Valley Country Club v. Mender, supra; Stang v. Hertz Corporation, 81 N.M. 69, 463 P.2d 45 (Ct.App. 1969).

*Whether the receipts are for a taxable service.*

The issue under this point is whether the receipts were for a type of service that is taxed. Section 72–16A–3, subd. K, supra, states in part: " 'service' means all activities engaged in for other persons for a consideration, which activities involve primarily the performance of a service as distinguished from selling property." The taxpayers contend their activites were not engaged in for other persons for a consideration. On this basis they assert they were not engaged in a type of service included in the definition of gross receipts (§ 72–16A–3, subd. F, supra) and, therefore, their receipts were not subject to the gross receipts tax (§ 72–16A–4, supra).

The contention is " * * * that the horse owners and horse trainers participate in the race for themselves and for no other person." The facts, stipulated by the parties, permit a contrary inference.

As to the trainer, it is stipulated that a trainer receives earnings from training horses for many different owners. By "long standing custom and practice" a trainer receives approximately $10.00 " * * * per day per horse from a horse owner for training the horse, as well as 10% of the winning purse that is received by the winning owner."

As to the horse owner, it is stipulated: "Licensees or operators of a horse race track agree with horse owners in advance of each racing year the percentage of * * * commissions * * * which will be paid to the horse owners as winning purses. * * *" It is also stipulated: "A licensee or operator of a horse race track cannot operate a race track without horses to race, trainers to train horses and jockeys to ride horses. Each are an integral part of racing, along with the facility owned by the licensee."

■ These stipulated facts permit the inference that both the horse trainer and the horse owner are engaged in activities for other persons for a consideration. With this permissible inference, the Commissioner did not err in holding that the receipts in question were receipts from performing a service within the meaning of the Gross Receipts Tax Act. Rock v. Commissioner of Revenue, (Ct.App.), 83 N.M. 478, 493 P.2d 963 decided January 21, 1972.

*Whether there was a joint venture.*

The taxpayers claim that the horse owner, the trainer and the jockey are joint venturers because of " * * * their combined efforts for the purpose of winning a pre-determined share of the purse." Joint ventures are subject to the tax. Section 72–16A–3, subd. H, supra. The taxpayers assert that if they were engaged in a joint venture they would not be engaged in activities for other persons for a consideration and, thus, not performing taxable services. See the second point discussed in this opinion. We hold the Commissioner could properly determine there was no joint venture; therefore, we do not reach the "services" contention.

Fullerton v. Kaune, 72 N.M. 201, 382 P. 2d 529 (1963) states:

"* * * A joint adventure is formed when, by agreement between the parties to the joint adventure, the parties combine their money, property or time in the conduct of some particular business deal, agreeing to share jointly in the profits and losses of the venture, and with a right to mutual control over the subject matter of the enterprise or over the property. * * *"

■ The parties stipulated that by custom the horse owner pays 10% of winning purses to the trainer and 10% to the jockey. Nothing in the stipulation requires the inference that a winning purse is a profit and nothing in the stipulation requires the inference that the owner, trainer and jockey have agreed to share in profits and losses. The parties stipulated that the owner, trainer and jockey are an integral part of racing, but nothing in the stipulation requires the inference that there is mutual control of the horse or the horse race. Since the stipulated facts are not such that the only reasonable inference is that of a joint venture, the Commissioner did not err in ruling that there was no joint venture. Rock v. Commissioner of Revenue, supra; Rust Tractor Co. v. Bureau of Revenue, 82 N.M. 82, 475 P.2d 779 (Ct. App. 1970).

*Whether an administrative ruling was not in accordance with law.*

The taxpayers assert the Commissioner's decision should be set aside because the controversy with which this appeal is concerned was "generated" by a specified Bureau of Revenue ruling. They contend the ruling was not promulgated in accordance with § 72–13–23, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1971). The argument is directed to the difference between regulations and rulings.

■ In authorizing appeals to this court from the Commissioner's decision, § 72–13–39, supra, limits the issues " * * * to the same extent and upon the same theory as was asserted in the hearing before the commissioner or his delegate. * * *" The appeal is on the record made at the hearing. The record does not show this issue was raised at the hearing. This issue is not before us for review. See Board of Education v. State Board of Education, 79 N.M. 332, 443 P.2d 502 (Ct.App. 1968).

*Whether the receipts were exempt under § 60–6–9, supra.*

Chapter 60, article 6, N.M.S.A. 1953 (Repl.Vol. 9, pt. 1), as amended, regulates horse racing. Section 60–6–4, N.M.S.A. 1953 (Repl.Vol. 9, pt. 1, Supp. 1971) provides that an applicant for a license to hold public horse races or race meetings [§ 60–6–1, N.M.S.A. 1953 (Repl.Vol. 9, pt. 1)] shall pay a specified license fee. Section 60–6–9, supra, states that in addition to the license fees, certain additional taxes are imposed " * * * which shall be paid in lieu of all other or further excise or occupational taxes levied by the state or any county or municipality or other political subdivision. * * *"

The taxpayers claim that § 60–6–9, supra, exempts them from the gross receipts tax. The additional taxes authorized by § 60–6–9, supra, are imposed on amounts received by a licensee on tickets sold for admission to the grounds and on gross amounts wagered each day where public horse racing for profit is held. These taxes are to be paid from the commissions of the licensee. The licensee is required to keep records in connection with those taxes. Nothing in the foregoing shows an exemption from gross receipts tax for horse owners or trainers. Nor do the taxpayers claim that § 60–6–9, supra, provides such an exemption.

The exemption claim is not based on the status of being an owner or trainer but on the receipts which the Commissioner held to be subject to the gross receipts tax. The source of the receipts is the winning purses paid to horse owners by the licensee or operator of the horse race track. "Licensees or operators of a horse race track agree with horse owners in advance of each racing year the percentage of the licensees' or operators' commissions on the sale of pari-mutuel tickets and certificates which will be paid to the horse owners as winning purses. * * *" Since the receipts of the owner and trainer come from purses paid by the licensee or operator of the track, and since these purses come

from funds which are taxed by § 60–6–9, supra, the taxpayers claim these funds are exempt from the gross receipts tax by the "in lieu of" provision of § 60–6–9, supra, which is quoted above.

The "in lieu of" provision of § 60–6–9, supra, can fairly be read to mean that the *licensee* is exempt from excise or occupational taxes except as provided in that section. Certainly, it does not clearly appear that the *funds* taxed are exempt from further taxation. Since § 60–6–9, supra, does not clearly authorize the exemption claimed, and it being the taxpayers' burden to establish their right to the exemption, the Commissioner did not err in holding the receipts in question were not exempt under § 60–6–9, supra. Reed v. Jones, 81 N.M. 481, 468 P.2d 882 (Ct.App. 1970); see Field Enterprises Ed. Corp. v. Commissioner of Rev., 82 N.M. 24, 474 P. 2d 510 (Ct.App. 1970).

*Whether the receipts were exempt under § 72–16A–12.7, supra.*

Section 72–16A–12.7, supra, reads:

"Exempted from the gross receipts tax are the receipts of any person derived from feeding or pasturing livestock.

"Receipts derived from penning or handling livestock prior to sale are receipts derived from feeding livestock for the purposes of this section."

For the purposes of the gross receipts tax, it is stipulated that race horses are included in the word "livestock." It is stipulated: "A claiming race is a horse race in which a claimant makes a bona fide offer to buy the race horse for which a claim is made, and the race horse owner agrees to sell the race horse he owns at a claiming price which is determined when the race horse is entered in the race. * * *" The frequency of claiming races in New Mexico and the number of horses claimed as a result of these races is also stipulated.

The taxpayers contend that the stipulation concerning claiming races shows a "handling [of] livestock prior to sale" and that their receipts are from such handling.

Under this contention, the receipts would be exempt since the statute defines the "handling" receipts to be "feeding" receipts which are exempted.

The answers to this contention are: (1) Nothing in the record shows the receipts in question were in any way derived from a claiming race; (2) the receipts in question derive from winning purses paid for a race and not from any sale, whether or not the horse was subsequently claimed; and (3) § 72–16A–12.7, supra, does not clearly authorize the exemption claimed. Reed v. Jones, supra. On both the facts and the law, the contention is without merit.

The order denying the protest is affirmed.

It is so ordered.

SUTIN and COWAN JJ., concur.