504 P.2d 638

**Felipe A. ARCHULETA, d/b/a Stockman's Saloon, Appellant,**

v.

**Fred L. O'CHESKEY, Commissioner of Revenue of the State of New Mexico, Appellee.**

No. 959.

Court of Appeals of New Mexico.

Nov. 30, 1972.

Robert · D. Montgomery, Ahern, Montgomery &· Albert, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., John E. Owens, John C. Cook, Bureau of Revenue Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

After an audit, the Bureau of Revenue assessed Archuleta for gross receipts tax, penalty and interest for the audit period. Archuleta protested the assessment. The audit was reworked. This resulted in an abatement of a portion of the assessment. A formal hearing was held as to Archuleta's liability for the assessment remaining after the abatement. The Commissioner of Revenue denied the protest as to the reduced amount of the assessment. Archuleta appeals. The issue is the sufficiency of the evidence to sustain the markup used by the Bureau in calculating Archuleta's gross receipts.

The evidence is that Archuleta's books and records were inadequate. See § 72–13–27, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1971). The Bureau computed Archuleta's gross receipts. It determined the cost of Archuleta's supplies of alcoholic beverages by comparing his purchase invoices with the records of his suppliers. It applied a markup to the cost price in arriving at gross receipts.

The markup was arrived at by considering the cost of the beverage in relation to the shelf price (retail price). This markup percentage was determined for beer, which accounted for 75% or more of Archuleta's volume, and for the other beverage sales. Taking this volume into account, a weighted average markup of 32.3% was determined for package store sales and 327% was determined for bar sales. Weighing the sales volume of the package store and the bar, a "Total Weighted Mark-up Average" of 35% was reached. In arriving at the 35% figure, two adjustments were made which will be discussed subsequently.

The audit period is from September 3, 1968 through February 28, 1971. The test month for shelf price was in 1971. Archuleta asserts this test month was unreliable because it "made no provision for inflation." Specifically, he claims use of the test month assumes the retail prices in 1971 were the same as in 1968, and fails to take into account Archuleta's increase in prices. The answer is that the Bureau applied the same percentage of markup throughout the audit period. This assumption, of a constant markup percentage, is supported by Archuleta. He testified: " . . . [I]f the price was going up, you know, the price of beer went up by the wholesaler, then my

price went up too. . . . " Further, Archuleta's testimony as to wholesale cost of beer and retail selling cost supports an inference that his percentage of markup remained constant.

■ Archuleta states: "The revised audit . . . included $4,017.70 as receipts for 'other' items, presumably the juke box and pool table. Yet the record shows absolutely no facts or evidence upon which such a figure was based. Furthermore, the Appellant has asserted that most of the money going into the juke box came from the Appellant's own pocket, and was therefore a business expense and not a receipt. This assertion was never denied by the Bureau of Revenue."

Section 72–13–39, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1971) authorizes appeals to this court " . . . but only to the same extent and upon the same theory as was asserted in the hearing before the commissioner. . . ." Archuleta did not protest these items and these items were not an issue at the hearing. The only issue was the percentage of markup. The juke box and pool table receipts are not markup items. Archuleta may not challenge, in this court, the sufficiency of the evidence as to receipts from these items when they were not an issue in the Commissioner's hearing. Till v. Jones, 83 N.M. 743, 497 P.2d 745 (Ct.App.1972).

■ Archuleta claims the 327% markup used for bar sales is "completely without foundation;" that a more realistic figure of 115% markup is revealed by his own testimony. The testimony of the Bureau employees and their calculations support the 327% markup figure. Thus, there is a conflict in the evidence. With this conflict, more than one inference could be drawn from the evidence. The Commissioner's decision and order approved the procedure followed by the Bureau in determining the amount of tax and thus necessarily drew the inference of a 327% markup on bar sales. The Commissioner's ruling is binding on Archuleta. Rock v. Commissioner of Revenue, 83 N.M. 478, 493 P. 2d 963 (Ct.App.1972); Rust Tractor Co. v. Bureau of Revenue, 82 N.M. 82, 475 P.2d 779 (Ct.App.1970).

■ Archuleta asserts that there is substantial evidence that his business was different in several ways from other retail liquor businesses; that " . . . the Bureau of Revenue's experience with other retail liquor businesses was not applicable to the present case. . . ." He relies on Gerner v. State Tax Commission, 71 N.M. 385, 378 P.2d 619 (1963) for the proposition " . . . that the fact that one taxpayer has been assessed in a particular manner is not a sufficient basis to sustain a similar manner of assessment against another taxpayer. . . ." Gerner, supra, involved assessment of real property. We need not decide whether the rule stated in Gerner, supra, is applicable to an assessment of gross receipts tax. Such a decision is unnecessary. The evidence in this case is that the Bureau did not assess Archuleta on the basis of experience with other retail liquor establishments. The evidence is that after adjustments were made, the markup calculated for Archuleta was 10 to 15% less in comparison to audits of other liquor establishments. Further, the evidence is substantial that the Bureau did recognize Archuleta's claim of being "different."

There are two elements involved in Archuleta's claim of being different. First, implicit in the challenge to the sufficiency of the evidence is a claim that his calculated gross receipts, based on the total weighted markup average, is too high because of break-ins resulting in thefts of liquor, embezzlement by employees, and breakage and spillage. In addition, Archuleta implicitly challenges use of "shelf-price" in figuring that markup because of "special discount" sales. He explains these discounts as lowered prices to meet advertised prices of competitors. According to the auditor, he first arrived at a markup figure, then reduced that markup 7% to allow for these items. When the audit was re-

worked, a 3% adjustment was allowed in addition to the 7% figure. This 3% was for the items mentioned above. It was applied to the cost of purchases, thus lowering the figure to which the markup was applied. There is no evidence that these allowances were insufficient to cover these items.

Second, in arriving at the total weighted markup average, the Bureau figured 99% of Archuleta's sales were attributable to the package store and 1% of sales was attributable to the bar. Archuleta testified the figures were respectively 90 and 10 percent. If Archuleta is correct then his assessment should have been higher because a lower markup figure was applied to package sales than was applied to bar sales. He is in no position to complain of the benefit received when the Commissioner approved the procedure applied by the Bureau.

The Bureau's assessment was presumptively correct. Section 72–13–32(C), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp. 1971). The burden was on Archuleta to overcome this presumption. McConnell v. State ex rel. Bureau of Revenue, 83 N.M. 386, 492 P.2d 1003 (Ct.App.1971); see Martinez v. Jones, 83 N.M. 722, 497 P.2d 233 (Ct.App.1972). Since none of Archuleta's contentions have merit, the presumption has not been overcome. Compare Rainbo Baking Company of El Paso, Texas v. Commissioner of Revenue, 84 N.M. 303, 502 P.2d 406 (Ct.App.1972).

The Commissioner's decision and order is affirmed.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

Section 72–13–27(A), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1971) of the Tax Administration Act provides:

A. Every person required by the provisions of any statute administered by the bureau to keep records and documents and *every taxpayer shall maintain books of account or other records in a manner that will permit the accurate computation of the state taxes or provide information required by the statute under which he is required to keep records.* [Emphasis added.]

The evidence is undisputed that Archuleta's books and records were not adequate to permit an accurate computation of the state tax. His testimony was based on supposition and guess. As a result, Archuleta did not satisfy the requirements of § 72–13–38(F), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1971).

The taxpayer has a duty to provide the commissioner with books and records upon which to establish a standard for taxation as provided by law. If he fails to do so, he cannot complain of the best methods used by the commissioner.

Under § 72–13–38(G), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1971), the commissioner has a duty to " . . . render a decision in accordance with the law and the evidence presented and admitted." The facts of this case clearly show that the decision was supported by substantial evidence. The presumption of the correctness of the assessment was not overcome by Archuleta, and I agree that the judgment should be affirmed. McConnell v. State ex rel. Bureau of Revenue, 83 N.M. 386, 492 P.2d 1003 (Ct.App.1971).