506 P.2d 354

**TORRIDGE CORPORATION, a New Mexico
corporation, and El Camino Motel, Inc., a
New Mexico corporation, Appellants,**

v.

**COMMISSIONER OF REVENUE, State of
New Mexico, Appellee.**

*No. 940.*

Court of Appeals of New Mexico.

Dec. 29, 1972.

Rehearing Denied Jan. 18, 1973.

Certiorari Denied Feb. 15, 1973.

## OPINION

HENDLEY, Judge.

This is an appeal from the Commissioner's Decision and Order assessing emergency school tax, gross receipts tax, compensating tax, municipal tax, penalty and interest against Torridge Corporation, d/b/a El Camino Restaurant and Lounge (Torridge) for the reporting period January 1, 1966 to March 31, 1971 and emergency school tax, gross receipts tax, municipal tax, penalty and interest against El Camino Motel, Inc. (El Camino) for the reporting period January 1, 1966 to March 31, 1971.

We affirm in part and reverse in part.

Torridge is a New Mexico corporation which operates a package liquor store, a lounge and a restaurant. El Camino is a New Mexico corporation which operates a motel. Both corporations have the same accountant. All tax returns for the period in question were timely filed.

During October, 1970 a fire occurred on the Torridge premises which destroyed, among other things, its entire books and records (ledgers, journals, bank statements, deposit slips and checks). The same fire also destroyed the entire records of El Camino except for a journal and ledger for 1970 which were not on the premises at the time of the fire. The Commissioner does not challenge the accidental nature of the fire.

Subsequently, the Commissioner conducted an audit from January 1, 1968 to March 31, 1971. The auditor made a finding that the gross receipts had been understated by 25%. Pursuant to § 72–13–33(D), N.M.S.A.1953 (Repl.Vol.1961, pt. 2, Supp.1971) the audit was extended to cover the years 1966 and 1967.

For the audit period, the auditor computed the gross receipts of both taxpayers based upon bank deposits, eliminating such bank deposits as could be determined from bank microfilm records to be either interdepartmental transactions or bank to bank transfers. Subsequent to the original audit

John P. Dwyer, Albuquerque, for appellants.

David L. Norvell, Atty. Gen., John C. Cook, Bureau of Revenue Asst. Atty. Gen., Santa Fe, for appellee.

a second audit was made and a partial abatement was provided for in the Commissioner's Decision and Order.

Taxpayers contend: (1) that the Commissioner was not justified in computing gross receipts from the taxpayers' bank deposits and (2) that the audit was "fraught with so many errors" that the Decision and Order is arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and not in accordance with law.

### Bank Deposit Method.

■ This is a matter of first impression. It is taxpayers' contention under this point that the Commissioner is not justified in using this method unless there is either a strong suspicion that taxpayer has received income from undisclosed sources or that taxpayer has failed to keep any records or that the records are inadequate. Taxpayers state that the mere fact that their records were destroyed by fire should not justify the Commissioner's resort to the bank deposit method with its inherent inaccuracies. We disagree.

Section 72–13–22(A), N.M.S.A.1953 (Repl.Vol.1961, pt. 2, Supp.1971) states:

"72–13–22. *Investigative authority and powers*. A. For the purpose of establishing or determining the extent of the liability of any person for any tax, for the purpose of collecting any tax or for the purpose of enforcing any statute administered by the bureau, the commissioner or his delegate is authorized to examine equipment and to examine and require the production of any pertinent records, books, information or evidence, to require the presence of any person and to require him to testify under oath concerning the subject matter of the inquiry and to make a permanent record of the proceedings."

■ We deem this statute not only as authority to examine pertinent books and records for the purpose of verification but also as authority to reconstruct records when they are destroyed. The fact of an accidental destruction is not material. The

nonexistence of records, for whatever reasons, is the pertinent fact.

We are not impressed by taxpayers' argument that the cases cited for the proposition of using the bank deposit method only relate to fraud and criminal prosecution. See Standard Federal Tax Reporter, CCH, Vol. 3, ¶¶ 2767.051–2767.0525 (1972) and cases cited therein. The issue is: when records do not exist, for whatever reason, what methods are available and reasonable in order to reconstruct the records?

■ Both taxpayers argue that since the two corporations had the same accountant, this was evidence that the books of both corporations were kept in the same way and, thus, the 1970 records of El Camino which corresponded with the returns filed that year created a presumption that the records of both corporations for the prior years would correspond with the returns filed for those years. We cannot say, as a matter of law, that such a presumption exists under the record as presented. To the contrary, once the notice of assessment of taxes is delivered to the taxpayer, the statutory presumption, of the correctness of the assessment, applies. Section 72–13–32(C), N.M.S.A.1953 (Repl.Vol.1961, pt. 2, Supp.1971). See McConnell v. State ex rel. Bureau of Revenue, 83 N.M. 386, 492 P.2d 1003 (Ct.App.1971).

■ We conclude that the bank deposit method is a reasonable method of reconstruction of records, regardless of what the reasons are for not having records. After the audit and the notice of assessment of taxes is delivered to taxpayer, taxpayer must carry the burden of proof in order to negate the presumption of correctness.

### The Audit.

It is taxpayers' contention that the audit was "fraught with so many errors as to result in an arbitrary and capricious result."

■ The Commissioner used the "test months" technique in performing the audit. After the first audit, a second and final

audit was prepared and certain adjustments were made in favor of taxpayers. Taxpayers state: "[t]he question naturally arises in one's mind what a third audit would reveal." Our answer to this is the same as under the first point. The notice of assessment of taxes based on the audit is presumed to be correct. Section 72–13–32(C), supra. Absent a showing of incorrectness by taxpayers, the audit and notice of assessment of taxes must stand.

■ The "test months" method was used for the audit period, January 1, 1968 to March 31, 1971. The test months were used to determine gross receipts subject to tax. There is evidence that the test months method is acceptable practice. Although there is conflicting evidence, the Commissioner could draw the inference from the evidence of the auditor, that the gross receipts were the amount computed by use of the test months and bank deposit methods. See Archuleta v. O'Cheskey, 84 N.M. 428, 504 P.2d 638 (Ct.App.), decided November 30, 1972. The Commissioner's decision, that the taxpayers failed to establish the inaccuracy of the gross receipts ascertained by the audit, is supported by evidence. Accordingly, the presumption of correctness of the assessments for January 1, 1968 to March 31, 1971, has not been overcome.

Taxpayers assert the audit technique was arbitrary because there were records available for El Camino for 1970, and because there is evidence that the records for both corporations for other years were kept in the same way. The argument is that the audit technique used should not have been employed in the light of this evidence. Two statutes are involved in this argument—§ 72–13–27, N.M.S.A.1953 (Supp. 1971) which requires a taxpayer to maintain records which permit an "accurate compilation" of taxes, and § 72–13–32, supra, which gives the Commissioner general investigative authority in determining the extent of tax liability. The taxpayers' position would have the effect of foreclosing any investigation of potential tax liability once a taxpayer asserts the records presented by him were accurate.

Our answer is that the two statutes are on equal footing; that although the taxpayer is required to keep accurate records, the Commissioner is also authorized to investigate to determine the extent of any tax liability. In this case, the investigation was not foreclosed by the fact that some records were available for one of the corporations for one of the years in question. Nor are the resulting assessments to be set aside by the presence of records for one taxpayer for one year when the Commissioner's ruling necessarily approved the audit results, and the audit results necessarily showed the available records were either inaccurate or incomplete. The techniques employed cannot be held to be arbitrary as a matter of law.

■ The assessments for 1966 and 1967 present a question of evidence. Those assessments were reached by using the gross receipts reported by the taxpayers for those years and applying to those reported receipts ". . . the percentage of exceptions found in the regular audit period. . . ." The evidence is that the audit period was January 1, 1968 to March 31, 1971. The audit shows the "percentage of exceptions", that is, the percentage of under-reporting of receipts, to be three different figures, depending on the portion of the audit period involved. There is no evidence of an "average" or "mean" under-reporting percentage. Compare Archuleta v. O'Cheskey, supra.

The auditor did not take test months for 1966 and 1967, and did not compute receipts for those years by the bank deposit or any other method. There is no evidence that any under-reporting percentage determined for an audit period can reasonably be applied to unaudited years.

The undisputed evidence of no audit for 1966 and 1967, of no test for gross receipts for those years and of different under-reporting percentages for the audited period establishes an absence of any basis for the assessments for 1966 and 1967. Since this

evidence is uncontradictcd, the Commissioner erred in ruling that the taxpayers failed to show the assessments for 1966 and 1967 were incorrect. The showing was there was no basis for these assessments. This showing overcame the presumption that the assessments were correct.

We affirm the Decision and Order of the Commissioner as to Torridge for the audit period January 1, 1968 to March 31, 1971, and reverse as to the years 1966 and 1967. We affirm the Decision and Order of the Commissioner as to El Camino for the audit period January 1, 1968 to March 31, 1971, and reverse as to the years 1966 and 1967.

It is so ordered.

WOOD, C. J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I respectfully dissent.

On October 6, 1970, an accidental fire destroyed all the books of account of Torridge Corporation for the periods in issue, including ledgers, journals, bank statements, deposit slips and checks. The entire records of El Camino Motel, Inc. were destroyed, except the journal and ledger for the year 1970. These were not. on the premises when the fire occurred. Both taxpayers were out of business from October 6, 1970, until June 3, 1971, a period of eight months. The Commissioner admitted that prior to the fire, the books and records of the taxpayers were adequate.

The record discloses, without dispute, that both taxpayers followed generally accepted accounting practices. The books were kept in accordance with generally accepted accounting principles, and all tax returns were prepared from these books and records, not from bank deposits. The. only proper method of computing gross receipts were from the books and records, and it would be impossible to reconstruct gross receipts from the bank statements

alone. All School Tax returns and Gross Receipts Tax returns for the periods in issue were timely filed. According to the testimony of a corporate officer—C.P.A., the tax returns were correct.

The auditor employed by the Commissioner used some of the bank deposits and a "test month" practice to arrive at an assessment of approximately $40,000 for gross receipts tax, compensating tax and municipal tax. He admitted that a most extraordinary situation would cause him to use the bank deposit method, and it would be more than monumental to reconstruct a set of books from examination of some checks procured from a bank. In fact, it was impossible. However, where a taxpayer *kept no books at all,* 40% of all audits were actually prepared from bank statements.

The taxpayers protested the assessments. The Commissioner denied the protests and found that the "gross receipts" or "gross proceeds of sales" by audit were correct and neither taxpayer established that they were incorrect.

In my specially concurring opinion in Archuleta v. O'Cheskey, 84 N.M. 428, 504 P.2d 638 (Ct.App.) decided November 30, 1972, I said:

The taxpayer has a duty to provide the commissioner with books and records upon which to establish a standard for taxation as provided by law. If he fails to do so, he cannot complain of the best methods used by the commissioner.

In the present case, (1) the taxpayers did keep adequate and proper books and records; (2) they filed tax returns on time; (3) the existing books of El ·Camino Motel, Inc. for the year 1970 corresponded with the gross receipts tax returns filed; (4) the books and records were destroyed by an accidental fire; (5) the Commissioner did not examine and inspect these books and records for any years in issue prior to the fire; and (6) no fraud, dishonesty or criminal conduct was involved in the operation of the businesses, the adequacy of the books and records, the prepa-

ration of all tax returns and the destruction of the books and records.

Under these circumstances, does the Commissioner have the power under statutory law to order an assessment based upon some bank statements, checks and "test month" procedures? I say "no." The basis upon which this type of audit was made is unknown.

In order to determine the Commissioner's power, we turn to the statutes. Legislative intent is determined primarily by the language of the act. We review the statutory language. Till v. Jones, 83 N.M. 743, 497 P.2d 745 (Ct.App.1972).

Sections 72–13–22, 72–13–23, 72–13–27, 72–13–28 and 72–13–32, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1971), provide:

1. Every taxpayer shall maintain books of account or other records in a manner that will permit the accurate computation of state taxes and a consistent accounting method. The taxpayers did this.

2. The Commissioner had a duty to inspect and audit the records and books of account of the taxpayers *at such times as he deems necessary* for the effective execution of his responsibilities. The Commissioner did not deem it necessary to perform for the years 1966, 1967, 1968, 1969, and prior to the fire on October 6, 1970, while the books and records were in existence. "As he deems necessary" means "as he considers or determines it to be necessary." King v. McElroy, 37 N.M. 238, 21 P.2d 80 (1933). The Commissioner did not deem it necessary during the years the books and records were in existence. He decided it was necessary after the accidental fire occurred when the taxpayers were denied the protection of the tax laws. The Commissioner failed to perform, not the taxpayers. When a commissioner fails to perform, a taxpayer should not be punished, because the taxpayer is not at fault. Dissenting Opinion, Cardinal Fence Co., Inc. v. Com'r of Revenue, 84 N.M. 314, 502 P.2d 1004 (Ct.App.1972).

3. The Commissioner was authorized to examine and require the production of any pertinent records, books, information and evidence. The Commissioner made no demand on the taxpayers for the production of anything, but the taxpayers made available the journal and ledger of El Camino for the year 1970, photostatic copies of bank statements and penciled copies of some tax returns. They had nothing else.

4. If the Commissioner determines that the taxpayer is liable for taxes, he shall promptly assess the amount thereof to the taxpayer and *this assessment is presumed to be correct*. The assessment of taxes is based upon the books and records of the taxpayer. Special Concurring Opinion, Archuleta v. O'Cheskey, supra. In my opinion, the presumption did not arise when the Commissioner failed to inspect and audit the taxpayers' books and records prior to destruction by accidental fire. The presumption arises when the taxpayer fails to keep adequate books and records, or no records at all. It does not arise when the auditor bases his estimate on some bank statements, cancelled checks, or "test month" procedure. There is no statutory law or regulation which gives the Commissioner the power to assess taxes in this manner when books and records are destroyed by accidental fire.

Even if a presumption of correctness does arise, it may be overcome by showing that the Commissioner failed to follow the statutory provisions contained in the Tax Administration Act or by presenting evidence to dispute the factual correctness of assessments. McConnell v. State ex rel. Bureau of Revenue, 83 N.M. 386, 492 P.2d 1003 (Ct.App.1971). In my opinion, both bases occurred. There is no presumption that the assessment was correct.

5. The Commissioner had the power to issue and file regulations to implement any provisions of any law administered by the bureau. It does not appear that any regulation was adopted to cover the troublesome problem in this case.

This is a matter of first impression in New Mexico. No authority in point has been cited and none has been found.

The Commissioner had the duty to establish and promulgate standards of assessment to insure that all businesses in this state, subject to gross receipts taxation, are assessed equally and uniformly when an extraordinary situation arises like the one in this case. See, New Mexico Prop. App. Dept. v. Board of County Com'rs, 82 N.M. 267, 479 P.2d 771 (1971). This was not done.

If any ambiguity or doubt exists as to the meaning or applicability of this tax statute, it must be construed most strongly against the taxing authority and in favor of those taxed. New Mexico Electric Service Co. v. Jones, 80 N.M. 791, 461 P. 2d 924 (Ct.App.1969); Albuquerque National Bank v. Com'r of Revenue, 82 N.M. 232, 478 P.2d 560 (Ct.App.1970). It is obvious that the Tax Administration Act did not intend to oppress a taxpayer who had complied with the law. To do so, is unfair and reversible. Special Concurring Opinion, Eaton v. Bureau of Revenue, 84 N.M. 226, 501 P.2d 670 (Ct.App.1972).

This court cannot extend the applicability of the statute beyond a clear import of the language used therein, Field Enterprises Ed. Corp. v. Com'r of Revenue, 82 N.M. 24, 474 P.2d 510 (Ct.App.1970), because it is not sufficiently broad in language to authorize a peripatetic method of assessment. Spillers v. Com'r of Revenue, 82 N.M. 41, 475 P.2d 41 (Ct.App.1970).

Recently, this court did not hesitate to reverse the Commissioner when his order was not in compliance with statutory law or contrary to legislative intent. Eaton v. Bureau of Revenue, supra; Cardinal Fence Co., Inc. v. Com'r of Revenue, supra; Rainbo Baking Company v. Com'r of Revenue, 84 N.M. 303, 502 P.2d 406 (Ct. App.), decided October 13, 1972.

In this type of case, where the taxpayer is not at fault, we must not cast the burden on the taxpayers to prove the Commissioner's audit incorrect. The burden should be on the Commissioner to prove the tax returns of the taxpayers were incorrect, false or fraudulent. The taxpayers in this case proved by substantial evidence that their tax returns were correct. The Commissioner did not see fit to challenge this fact.

The Commissioner's order was not in accordance with law. The taxpayers' protests should be affirmed.