Dear Representative Duke,
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
1. Are the terms of 68 O.S. 1501 and 68 O.S. 1503 (1988), whichimpose a fee upon the ownership or use of coin-operated devicesin Oklahoma, intended to encompass newspaper racks?
2. If the terms of this statute are intended to encompassnewspaper racks, are these requirements constitutional in lightof the protections granted to freedom of the press by the FirstAmendment and Due Process Clause of the Fourteenth Amendment tothe Constitution of the United States?
¶ 1 The 1988 Legislature, in House Bill No. 1839, adopted an act addressing many areas attendant to the state taxation levied upon "coin-operated devices." See, Okla. Sess. Laws 1988, c.47, pp. 110-119. The set of laws taxing "coin-operated amusement devices" and "coin-operated music devices" was amended to encompass also the taxation of "coin-operated vending devices" and "coin-operated bulk vending devices." Compare, 68 O.S.1501 (1987) with 68 O.S. 1501 (1988). At the same time, all of these terms were generally declared to be encompassed as subsets within a broader realm of devices, known collectively as "coin-operated devices." 68 O.S. 1501(7) (1988).
¶ 2 Under newly-amended 68 O.S. 1503(A), every person "who owns and has available to any of the public for operation, or who permits to be operated in or on his place of business, coin-operated devices shall pay for such privilege an annual fee." The size of the fee imposed varies, depending upon the type of device involved, and the value of the coin that must be inserted to utilize the device for operation. Id. The term "coin-operated vending device," in turn, is defined thusly:
 5. "Coin-operated vending device" means any and all machines or devices which, upon the payment or insertion of a coin, token or similar object, dispenses tangible or personal property, including but not limited to cigarettes, candies, gum, vending machines or devices used exclusively for the purpose of selling services, such as pay telephone booths, parking meters, gas and electric meters or other distribution of needful service.
68 O.S. 1501 (1988).
¶ 3 At the same time, the Legislature also indicated that this imposition of the new "fee" was "to be in lieu of sales tax levied pursuant to 68 O.S. 1350 through 68 O.S. 1372". 68O.S. 1503(B) (1988). Your first question asks whether this new taxation imposition was intended to apply to the sale of newspapers from newspaper racks.
¶ 4 The cardinal rule of statutory construction is to ascertain the intent of the Legislature and, if possible, to effectuate that intent. Jackson v. Ind. School District No. 16, PayneCounty, 648 P.2d 26 (Okla. 1982). In reviewing tax statutes, those laws should be given reasonable construction, with the view in mind of carrying out legislative intent and purpose as evidenced from a reading of the entire set of laws adopted.Affiliated Management Corp. v. Oklahoma Tax Commission,570 P.2d 335 (Okla. 1977).
¶ 5 Newspapers have been held to constitute "tangible personal property" for taxation imposition purposes. State v. AdvertiserCo., Inc., 59 So.2d 576 (Ala. 1952). A very technical reading of the terms of the definitional clause to 68 O.S. 1501(5), therefore, could lead to the conclusion that coin-operated racks from which newspapers are sold were intended to be regulated by this new statute. However, the important qualifying phrase in 68O.S. 1503 stating that this new fee was intended to be "in lieu of" the sales taxes imposed upon the items dispensed or made available through the use of these devices, coupled with other considerations particularly peculiar to the newspaper trade, compels a different finding as to inclusion of newspaper vending machines under this set of laws.
¶ 6 The sale and dissemination of newspapers has been an area where the legislatures of the many states have been historically reticent to tax. Grossjean v. American Press Company, Inc.,297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936). Where tax imposition upon the income of the newspaper industry has been made in Oklahoma, there has usually been a specific statement regarding the imposition of taxation spelled out in the statutes. 68 O.S.1357(C) (1987). While it is absolutely settled that newspapers may be validly required to adhere to general taxation formats which treat them similarly with other business entities, the courts have been quick to criticize and strike down taxation schemes which single out newspapers in special fashions.Minneapolis Star and Tribune Company v. Minnesota Commissionerof Revenue, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983).
¶ 7 In this instance, the annual fee imposed upon the ownership or operation of coin-operated devices is imposed "in lieu" of the sales taxes that would be owed otherwise. The sale of newspapers costing seventy-five cents ($0.75) or less per copy are specifically exempted from the sales tax impositions usually found applicable to the sale of personal property in the state.68 O.S. 1357(C) (1987).
¶ 8 The term "in lieu" is generally held as meaning "instead of" or "in the place of." City of Mesa v. Killingsworth,394 P.2d 410, 414 (Ariz. 1964); Till v. Jones, 497 P.2d 745, 750
(N.M. 1972). The term has been held in some instances only to authorize the imposition of an "in lieu" tax if the item sought to be taxed was already subject to being taxed in the manner that the "in lieu" tax was designed to replace. Atchison, Topeka Santa Fe Ry. v. Arizona, 559 F. Supp. 1237, 1245 (D.C. Ariz. 1983) (Railroad Revitalization and Regulatory Reform Act). In other instances, the courts have refused to so limit the imposition of the in lieu tax, advising that its imposition did not presume the existence of a preexisting tax. Western AirLines, Inc., v. Bd. of Equalization of South Dakota,
480 U.S. ___, 108 S.Ct. ___, 94 L.Ed.2d 112, 122-23 (1987) (South Dakota Airline Flight Property Tax).
¶ 9 There is no Legislative intent indicated in the new terms of House Bill No. 1839 that the in lieu fee imposed was intended to address the sale of newspapers already exempt from sales tax imposition under 68 O.S. 1357(C) (1987). The taxation of newspaper racks, without clear statutory authority commanding such an action, would be an unusual departure from the traditional legislative reticence in this area. This point, coupled with the existent exemption of the sale of newspapers not above seventy-five cents in price, and the attendant regulatory licensure mechanism built into this set of laws, a type of regulatory format not usually applied to the dissemination of newspapers, evidences that the Legislature did not intend to embrace the sale of newspapers exempt from sales tax and sold from newspaper racks within this new regulatory system.
¶ 10 As it is advised that the sale of newspapers from coin-operated vending devices is not intended to be encompassed by the terms of House Bill No. 1839, it is not necessary to address your second question regarding the constitutionality of such a taxation system, although it is noted that it is legally possible to validly subject the press to state sales tax impositions. Minnesota Star, supra.
¶ 11 In this same vein, it is specifically noted that this opinion does not attempt to advise that all "in-lieu" taxes must replace existing tax impositions in order to attach to a particular taxable item or transaction. Such determinations must be made on a case-by-case evaluation of legislative intent. Neither does it attempt to rule that all items that might be exempt from sales taxation are also automatically exempt from the strictures of House Bill No. 1839. Rather, this opinion is rendered upon a review of a totality of the available indicators of legislative intent regarding the taxation of newspaper vending machines only.
¶ 12 It is, therefore, the official opinion of the AttorneyGeneral that the terms of 68 O.S. 1501 and 68 O.S. 1503(1988), authorizing the imposition of a fee to be paid upon theuse of coin-operated vending devices, do not envision theinclusion of coin-operated newspaper racks within its regulatorysystem.
ROBERT H. HENRY Attorney General of Oklahoma
MICHAEL SCOTT FERN Assistant Attorney General Deputy Chief, General Counsel Division